# SUPREME COURT OF ARKANSAS

**No.** CV–16–144

| | |
|---|---|
| MARILYN CURRY TROUTMAN | **Opinion Delivered** April 20, 2017 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. DR-04-1055] |
| V. | |
| RONALD TROUTMAN | HONORABLE MARK LINDSAY, JUDGE |
| APPELLEE | REVERSED AND DISMISSED; COURT OF APPEALS OPINION VACATED. |

**JOSEPHINE LINKER HART, Justice**

Marilyn Curry Troutman (Curry) appeals from a December 8, 2014 Washington County Circuit Court order reducing her exhusband Ronald Troutman's monthly child–support obligation to $2108 from $6005 per month established by an agreement of the parties and memorialized in an order entered on October 25, 2012. The new support obligation was made retroactive to June 9, 2014, and the circuit court ordered amortization of the $27,279 overpayment by a further $1000 per month reduction in Troutman's payments. On appeal, Curry argues that the circuit court erred in (1) finding that Troutman met his burden of proving that there has been a material change of circumstances; and (2) calculating Troutman's income for the purpose of child support. We agree that Troutman failed to prove a material change of circumstances, and we reverse and dismiss.

After the court of appeals affirmed the circuit court's order, Curry petitioned for

review. She alleged that the court of appeals had failed to follow its own precedent in regard to the treatment of retained earnings of a closely held Subchapter S corporation, thus creating a split of authority. Because it was apparent that the court of appeals decision calculations conflicted with prior court of appeals decisions, *Pannell v. Pannell*, 64 Ark. App. 262, 981 S.W.2d 531 (1998) and *Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998), we granted Curry's petition pursuant to Supreme Court Rule 2-4, which is invoked when the court of appeals "renders a decision which is in conflict with a prior holding of a published opinion of either the supreme court or the court of appeals."[1] When we grant a petition for review, we consider the appeal as though it had been originally filed in this court. *Lagios v. Goldman*, 2016 Ark. 59, 483 S.W.3d 810.

The parties married in 1998 and divorced in 2005. In 1999, the parties' only child was born. In the divorce decree, Troutman's original support obligation was set at $762 per month. In 2011, Curry successfully petitioned the circuit court to raise Troutman's monthly

---

[1] The dissent's discussion of *Anderson* and *Pannell* shows a misunderstanding of how appellate-court decisions must affect lower-court decisions. First there is no "procedural matter" that affects the binding effect of these cases on the circuit court. When a lower court correctly identifies a point of law, and the case is affirmed, that holding is just as binding on the circuit court as a case where an appellate court identifies a trial court's mistake of law. Second, the trial court in *Anderson*, after propr calculation of the income that the payor had available for child support purposes, found that it would be inequitable—*in that case*—to count retained earnings in assessing the payor's child-support obligation. *Anderson* was a case where the trial court found that the equities weighed in favor of *deviating* from the amount of child support indicated by the family-support chart included in Administrative Order No. 10. Section V of Administrative Order No. 10 expressly gives trial courts the discretion to deviate from the child-support chart in appropriate cases. The case before us is not a deviation case, but rather one in which the trial court improperly calculated Troutman's income for child-support purposes.

child-support obligation to $3,095. In 2012, Curry again petitioned for an increase in child support. Pursuant to her petition, Curry sought to discover Troutman's income in 2012, and when Troutman resisted, she moved for contempt. The circuit court denied Curry's contempt motion, but in the same order, memorialized an agreement by the parties raising Troutman's child-support obligation to $6,005 per month.

On June 9, 2014, Troutman petitioned the circuit court to reduce his child-support payments. Attached to his petition was a summary of his taxable income, as reported on his Form 1040 for 2012 and 2013, as well as the deductions allowed by Administrative Order No. 10. He represented that the net sum was his income for child-support purposes.

At the hearing on his petition, Troutman testified that he is a general contractor as well as the owner of other businesses that he claimed were not profitable. As a contractor, he conducts his business through Boulder Construction, Inc. (Boulder), which he started in 2004. Troutman acknowledged that Boulder is a subchapter S corporation, in which he owns all of the stock. He claimed that he used "completed projects" for "our type of accounting."

Troutman further testified that, because of the accounting method he used, Boulder has income in 2013 that will be distributed in 2014. He also asserted that it was a sound business practice for Boulder to retain large sums of cash to cover unforseen problems with projects that could result in the work being less profitable than he anticipated. Nonetheless, Troutman admitted that he had shareholder distributions in 2013 totaling between $550,000 and $580,000. Further, he conceded that as sole shareholder, he has absolute authority to decide how much of Boulder's retained earnings he could withdraw.

3

Troutman stated that, as of the hearing, Boulder had approximately $400,000 in "liquid" assets. Referring to his tax returns, which were made part of the record, Troutman asserted that his company's cash reserves "went down substantially in 2013" and his accounts receivable "went up drastically." Nonetheless, Troutman admitted that in the 2013 tax year, he made a considerable cash outlay for land for his rock business, Winslow Stone Works and also purchased a bulldozer at a cost of more than $100,000. Troutman acknowledged that he took a $554,000 distribution in 2013, but claimed that he used it to pay his child support and income taxes.

Troutman defended the declaration of his income found in the attachment to his petition. He claimed that it was the same calculation that resulted in his voluntary decision to increase his monthly child support obligation from $3095 in 2011 to $6005 in 2012.

The documentary evidence contradicted Troutman's testimony in several important respects. Most importantly, attachment M-1 to his schedule K from his 2013 federal tax return indicated that Boulder reported $785,392 in deferred income that was not subject to federal tax in 2013. Accordingly, Troutman's "liquid assets" were considerably higher than he represented at the hearing. Also, while purporting to show a loss of income in 2013, various schedules showed that despite a distribution of $554,745 to Troutman as the sole shareholder of Boulder, the company's cash reserves increased.

Certified Public Accountant, Jake Keen, testified in Curry's case-in-chief. He stated that Troutman's accounting method, was uncommon, but not unknown. He opined, based on Troutman's 2013 tax returns, that Troutman had at least $705,245 in income "to live on."

4

Further, he testified that Troutman's income in 2013 was "consistent between 2012 and 2013." On cross-examination, Keen conceded that Boulder's cash reserves declined between 2012 and 2013 by as much as $650,000. Nonetheless, Troutman withdrew $554,000 that he did not count as income on his 2013 tax return. Keen disputed that all of the distribution was used for child support and taxes—he asserted that, based on a quick calculation, no more than $295,000 was necessary for those outlays, which left in excess of $200,000 available for child support.

Troutman presented his Certified Public Accountant Reece Parcham as a rebuttal witness. Parcham stated that the "completed projects" accounting method was commonly used by contractors with revenues of less than $10 million per year. He defended Troutman's assertion that Boulder's income was substantially less than in previous years, and asserted that Troutman's income would be substantially greater in 2014 when several projects are completed. According to Parcham, "it will all come out in the wash." Parcham could not state whether Troutman had paid taxes on the distribution that he took in 2013, but asserted that Troutman will not escape paying taxes on it at some point. Parcham stated that Boulder's retained earnings should not be considered for child-support calculations. He conceded, however, that Troutman had the "use and benefit" or the $550,000 he drew down in distributions from Boulder. Parham also conceded that not all of the depreciation that Troutman claimed on his income-tax returns were "economic" depreciation.

Curry moved to dismiss Troutman's petition at the close of the evidence. She asserted that Troutman had not met his burden of showing a material change-of-circumstances. The

circuit court declined to consider any proof of Troutman's income other than what was listed in the attachment to his petition. It stated that it was going to calculate Troutman's support obligation without regard to the previous support order, considering only the decline in Troutman's income from 2012 to 2013.

While describing Troutman's accounting method as "wacky," the circuit court declined to "literally apply the section of section III [in Administrative Order No. 10] to this particular fact situation." It further found that the depreciation that Troutman claimed was "going to catch up with him at some point in time." The circuit court acknowledged that Troutman had the use of in excess of $500,000 in 2013, but the "preponderance of the evidence indicates that he paid the income tax on it before he had use of it. So, to make him pay child support on it again would be punishing him. It would be double taxation, so to speak on his income as defined by Administrative Order 10."

The circuit court accepted what Troutman determined to be his "net income" for 2012 and 2013—his adjusted gross income listed on his Form 1040 for the tax years 2012 and 2013, less the allowable deductions listed in Administrative Order No. 10 (social security, medicare tax, state and federal taxes, and health insurance). It added the sums together, $470,766 for 2012 and a loss of $124,033 for 2013 and divided by two to obtain an average for the two years: $173,367. The circuit court then calculated the chart amount of child support for a monthly income of $14,447, which is $2108, made retroactive to the June 9, 2014 filing of Troutman's petition to modify. Noting that in the intervening time since the filing of the petition, Troutman had paid $27,279, the circuit court ordered that the overage

be amortized by subtracting $1000 per month from Troutman's child-support payments. Curry timely filed a notice of appeal.

We review child-support cases de novo on the record. *Chitwood v. Chitwood*, 2014 Ark. 182, 433 S.W.3d 245. Under our standard of review, we do not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Id*. We give due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id*. However, we give no deference to a circuit court's conclusion of law. *Id*.

Curry first argues that the circuit court erred in finding that Troutman met his burden of proving that there has been a material change of circumstances. She asserts that the circuit court's ruling is "flawed in three critical respects." First, she asserts that the circuit court's "exclusive" reliance on Troutman's reported individual income in 2012 and 2013 is contrary to law. Second, the circuit court found a material change of circumstances despite a complete absence of evidence regarding Troutman's income for the first eleven months of 2014. Third, the circuit court abused its discretion in employing a methodology for determining the amount and sources of income that failed to take into account Troutman's ability to manipulate the distribution of Boulder's retained earnings. We find merit in these arguments.

A party seeking modification of a child-support obligation has the burden of showing a material change of circumstances sufficient to warrant the modification. *Baber v. Baber*, 2011 Ark. 40, 378 S.W.3d 699. Changed circumstances warranting an adjustment may include remarriage of the parties, a minor reaching majority, relocation, change in custody, debts of

the parties, ability to meet current and future obligations, and change in the income and financial conditions of the parties. *See Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219. Moreover, under Arkansas Code Annotated section 9–14–107(a)(1) (Repl. 2015), a relatively minor change in the payor's income can constitute a material-change-in-circumstances. It states:

> A change in gross income of the payor in an amount equal to or more than twenty percent (20%) or more than one hundred dollars ($100) per month shall constitute a material change of circumstances sufficient to petition the court for modification of child support according to the family support chart after appropriate deductions.

Ark. Code Ann. § 9-14-107(a)(1).

When a circuit court considers the issue of whether there has been a material change in circumstances, it considers the facts that have changed or were not known by the court at the time it entered the previous order. *See Grable v. Grable*, 307 Ark. 410, 821 S.W.2d 16 (1991). We consider the material changes that have occurred since the entry of the last order so that a subsequent petition to increase or decrease support will not be res judicata. *Clifford v. Danner*, 241 Ark. 440, 409 S.W.2d 314 (1966). In the case before us, Troutman only presented evidence of his 2012 and 2013 income. We know from the 2012 support order that no evidence of Troutman's 2012 income was before the court because, in the order, the circuit court declined to find Troutman in contempt for not providing that information.[2]

We are mindful that Troutman asserted at the hearing that he calculated his 2011

---

[2] The dissent apparently fails to understand the importance of the changed-circumstances doctrine. The doctrine strikes a balance between the need for finality in any litigation and the equitable interest in properly supporting minor children.

income in the same way that he was asking the circuit court to in his petition. We reiterate that the 2012 support order reflected an agreement by the parties, not a calculation by the circuit court.

The circuit court ignored this obvious failure of proof. Instead, as noted previously, the circuit court calculated Troutman's new support obligation based on his declaration of income. This was clear error by the circuit court for two reasons. First, the circuit court could not have determined whether Troutman's income had changed since 2011 because no direct evidence of Troutman's 2011 income had ever been before the circuit court. Second, the agreed order could not even be circumstantial evidence of Troutman's 2011 income because, according to Troutman's own testimony, his calculations in 2012 were the same as those he placed before the circuit court in 2014.

Curry argues, and we agree, that Troutman's calculations of his income for child–support purposes do not properly account for Boulder's retained earnings and other elements of the money that Troutman had available to support his child, but were not taxable in 2011 under the Internal Revenue Code. As our court of appeals noted in *Pannell v. Pannell*, *supra*, and *Anderson v. Anderson*, *supra*, Administrative Order No. 10 contemplates a more expansive definition of income, that requires the circuit court to consider the retained earnings of a closely held corporation. The rationale is sound. By focusing on the actual money available to support a child, it prevents a payor from using the tax code to legally manipulate the

9

amount of income to be considered for child-support purposes.[3]

This court has defined "income" as "any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest less" certain enumerated deductions. *Hall, supra* (quoting Ark. Sup. Ct. Admin. Order No. 10(II)(a) (2011)). This intentionally broad definition is intended to encompass the widest range of sources to effectuate this State's policy to adequately support children. *Id.* Our decision today is consonant with our previous recognition of nonperiodic monetary judgments, monetary gifts, certificates of deposit, retirement payments, and even gambling winnings, as income for purposes of determining child support. *See Hall, supra.*

Because we hold that the circuit court erred in finding a material change in circumstances, and because Curry did not file a counterpetition for an increase in child support, we need not address Curry's second point regarding the method utilized by the circuit court in calculating Troutman's child-support obligation.

For the forgoing reasons, the circuit court's 2014 order changing Troutman's monthly child support payments retroactive to the filing of his petition is reversed and dismissed.

---

[3] For example, in the case before us, in 2013 Troutman claimed a loss for income tax purposes of $122,487. This "loss" includes his $53,775 salary from Boulder. On Boulder's Form 1120S, Boulder's 2013 income tax return, Troutman's compensation appeared as an expense, which contributed to its claimed loss of $171,892. In practical terms, regardless of the tax treatment of his salary, Troutman had full use of his salary to live on. A similar analysis could be applied to the depreciation Troutman claimed for his businesses. It was a proper tax deduction, but did not directly translate into a loss of the net worth of the asset, and more importantly, the income that Troutman had the benefit from.

Reversed and dismissed; court of appeals opinion vacated.

Special Justices JERROLD JOHN SCHOLTENS and DAVID HOGUE join.

KEMP, C.J., and WOOD and WOMACK, JJ., dissent.

GOODSON and WYNNE, JJ., not participating.


**JOHN DAN KEMP, Chief Justice, dissenting.** I respectfully dissent. I believe the circuit court correctly determined that Troutman experienced a material change in circumstances as defined in Arkansas Code Annotated section 9-14-107(a)(1) (Repl. 2015).

I believe the circuit court correctly applied the provisions of Arkansas Supreme Court Administrative Order No. 10 in determining Troutman's income for child-support purposes.

I would affirm the circuit court.

**SHAWN A. WOMACK, Justice, dissenting.**

*"Our new Constitution is now established, and has an appearance that promises permanency; but in this world nothing can be said to be certain, except death and taxes."*

*-Benjamin Franklin, 1789*


We are all familiar with Benjamin Franklin's famous quote about death and taxes. This case offers a modern-day insight into both subjects. The part about taxes is obvious in the discussions about income tax returns, definitions of income, accounting methods, retained earnings, and so on. It is the death part of the quote that may not register with readers on the first reading of the majority opinion. However, over time and application of this decision, it

will become obvious that two things have died today at the hands of the majority. The first, narrowly speaking, is Administrative Order No. 10 of this court for the purpose of defining income of self-employed individuals. The second death comes in the broader concept of the ability of circuit courts and litigants to rely on the plain, clear, and concise instructional language given to them by orders of this court and applicable statutes. Both die an untimely death by the blunt force administered to them in the majority opinion.

There are few areas in the law that provide guidance so clear as the relevant portion of Administrative Order No. 10 where it specifies which line of the tax return to use in determining income for self-employed payors or the relevant statute defining a material change in circumstance on either a percentage basis or a specific dollar amount. The bizarre reasoning of the majority opinion manages to find the trial court's order clearly erroneous when it in fact followed the specific guidance given to it by this court and the legislature. If this court believes that Administrative Order No. 10 should be altered, this should be done only after thorough review by the Supreme Court's Committee on Child Support, which allows practitioners, circuit judges, and lay people to participate in evaluating an amendment of our administrative orders. To rewrite an administrative order because the majority does not particularly like the facts of one case is cavalier and dangerous.

As the majority stated, this court reviews child-support orders de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *See, e.g., Ward v. Doss*, 361 Ark. 153, 158, 205 S.W.3d 767, 770 (2005). In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the

12

credibility of the witnesses and the weight to be accorded to their testimony. *Id.* When the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *Id.* In order to modify a child-support amount, the petitioning party must demonstrate a material change in the payor's circumstances. *See, e.g.*, *Hall v. Hall*, 2013 Ark. 330, at 4–5, 429 S.W.3d 219, 222. We review a finding that there has been a material change in circumstances for clear error. *Id.* Because I believe that the circuit court faithfully followed the guidance of Administrative Order No. 10 and the text of the relevant statute in determining that Troutman demonstrated a material change in circumstances, I must dissent from the majority's conclusion that the circuit court's actions were clear error under our deferential standards.

Troutman has paid child support continuously since the initial decree. His original obligation was $762 per month, but this was increased twice due to the success of his construction business. Troutman is the sole shareholder in Boulder Construction, an S corporation. His first obligation increase was to $3,095 per month; the second was to $6,005 per month. This litigation stems from Troutman's 2014 petition to modify the decree downward due to an alleged material change in his circumstances.

The circuit court followed the guidance of Administrative Order No. 10 for self-employed payors, looking at Troutman's previous two income tax returns. His 2012 return shows personal income of $717,137, while his 2013 return shows a loss of $171,892. Despite his reported losses in 2013, the corporate returns from Boulder for that year indicate that Troutman took a distribution of $554,745 from the company and that the company had

$785,392 in deferred income during the year. The court considered expert testimony from accountants representing both parties in the December 2014 hearing. Curry argued that the distribution from the company, despite not appearing on Troutman's personal income tax return, should be considered income for the purposes of child-support calculation. Troutman argued that the terms of Administrative Order No. 10 and the past practice in modifying his own support obligation upward are consistent with averaging his personal income tax figures without taking special notice of corporate distributions or deferred income.

The circuit court sided with Troutman's arguments. It gave weight to the expert testimony that any perceived inconsistency between Troutman's reporting a loss in 2013 while simultaneously taking a substantial distribution was explained by standard accounting practices for small construction companies. Any corporate distributions that Troutman received the benefit from either (1) had been reported on prior tax returns and factored into prior child-support payments or (2) would be reported on future tax returns when the associated construction projects were completed and could be factored into future child-support payments. The court set Troutman's new payment at $2,108 and deducted $1,000 per month until he recouped the overpayment of support under the old figure, which he had been paying since he filed his petition for modification.

On appeal, Curry argues that the circuit court clearly erred in finding that Troutman proved a material change in circumstances sufficient to justify a modification of child support. She contends that the trial court should have included the distribution that Troutman took

and Boulder Construction's deferred income in 2013 when calculating income under the "intentionally broad" definition provided in Administrative Order No. 10(II).

Administrative Order No. 10, promulgated by this court pursuant to the authority granted in Arkansas Code Annotated section 9-3-312, prescribes the method by which this state's courts determine child-support payments. The order provides family-support charts for individuals who receive their income on regular weekly, biweekly, semimonthly, or monthly bases. The charts specify a presumptively correct amount that courts should award as child support from payors in each band of income. In recognition of the fact that not all income streams conform to one of these lockstep pay periods, however, the order includes a section for nonsalaried payors. Troutman's circumstances are governed by the language concerning self-employed payors, which states:

> For self-employed payors, support shall be calculated based on the last two years' federal and state income tax returns and the quarterly estimates for the current year. A self-employed payor's income should include contributions made to retirement plans, alimony paid, and self-employed health insurance paid; this figure appears on line 22 of the current federal income tax form.

Ark. Sup. Ct. Admin. Order No. 10(III)(c).

The order gives the circuit court discretion to deviate from the specified charts and methods if it finds specific reasons why application as written would be contrary to the best interests of the child. *See* Ark. Sup. Ct. Admin. Order No. 10(I), (V). The order's specified method is, however, presumptively correct absent such a finding. Here, the circuit court applied the language for self-employed payors as written in the order. It weighed and accepted accountant testimony that the "line 22" change in Troutman's federal and state tax returns

demonstrating net income in 2012 and net loss in 2013 represented the actual state of his finances. Further, it accepted, after hearing extensive testimony and argumentation, that the 2013 distribution necessarily came from funds that either had been taxed or would be taxed in the related project-completion year in accord with a common construction accounting practice. Finally, it accepted Troutman's argument that the quarterly estimates as contemplated by the order would not be possible or helpful given his use of this project-completion accounting practice and his loss in the prior year.

With this definition of Troutman's income in mind, resolution of the legal issues in this case should be straightforward. The material change in circumstances required to modify a child-support order is a creature of statute. Arkansas Code Annotated section 9-14-107(a)(1) (Repl. 2015) defines as material a "change in gross income of the payor in an amount equal to or more than twenty percent (20%) or more than one hundred dollars ($100) per month." The circuit court did not clearly err in finding that Troutman's tax returns showing a change from an income of $717,137 to a loss of $171,892 represents a change in gross income of more than $100 per month. Indeed, even if the circuit court had accepted Curry's arguments and had included some or all of the distribution that Troutman took from his company or deferred corporate income in the calculation, the exceedingly modest statutory requirement for demonstrating a material change in circumstances would have been met. The majority asserts that the circuit court overlooked a "failure of proof" because of purported gaps in Troutman's presentation of 2011 income data. Even if the majority's characterization of the 2011 information is correct, it would be irrelevant here. It is uncontested that the circuit court

had 2012 and 2013 returns before it. Given the huge disparity in income between those two years, the circuit court was certainly entitled to determine that a material change in circumstances had occurred.

Finally, the majority adopts Curry's characterization of *Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998), and *Pannell v. Pannell*, 64 Ark. App. 262, 981 S.W.2d 531 (1998), as standing for the proposition that Administrative Order No. 10 "requires the circuit court to consider the retained earnings of a closely held corporation" to prevent "a payor from using the tax code to legally manipulate the amount of income to be considered for child-support purposes." This is a deeply misleading characterization of those cases.

First, as a procedural matter, both cited cases are instances in which an appellate court *affirmed* chancery court decisions grounded in the results of fact-intensive inquiries into the payor's financial state. In *Pannell*, for instance, the chancellor opted to include retained corporate income in calculating a child-support obligation when the record indicated that the payor arguing for a lower payment was simultaneously using company funds to purchase luxury cars, $100,000 worth of racehorses, and an airplane for his personal use. *See Pannell*, 64 Ark. App. at 265, 981 S.W.2d at 532. Including retained corporate income may well make sense in a case where the circuit court fears the sort of bad-faith manipulation contemplated by the majority. Finding such manipulation, however, is best left to the circuit court, and no such finding was made in this case. In fact, not only did the trial court not make a finding of manipulation that would trigger use of its discretion to deviate, but the testimony makes clear that the accounting method used by Troutman was selected at the inception of the business

17

and remained unchanged throughout the life of the company. If anything, this gives a strong indication that no manipulation took place.

Second, it is impossible to reconcile the majority's legal summary of the precedents with *Anderson*. In that case, the court of appeals affirmed a chancery court decision that in fact *excluded* retained income from an S corporation from the child-support calculation. *See Anderson*, 60 Ark. App. at 228–29, 963 S.W.2d at 608. Even though the chancery court considered the retained earnings to be income within the definition of Administrative Order No. 10, it wrote that the "plaintiff has rebutted the presumption that the amount reflected by the child support chart after including income from retained earnings is the just amount of child support to order in this particular case." *Id*. The chancellor merely declined to permit the payor to deduct from his child-support calculation the income tax he had paid on retained earnings. Since the chancellor excluded the income from the calculation, giving the payor credit for the taxes paid on it would be a windfall. *Id*. Put simply, there is no ironclad rule that the circuit court must include retained corporate income in child-support calculations. *Pannell* and *Anderson* stand only for the discretion of circuit courts to make that inclusion if the circumstances warrant it.

The circuit court in this case fulfilled its duty precisely as contemplated by Administrative Order No. 10. I would find no clear error in its decision to follow the prescribed method for self-employed payors of looking at Troutman's previous two years' tax returns to calculate income for the purposes of child support. Further, any interpretation of

the circumstances supports the circuit court's conclusion that Troutman experienced a material change in circumstances for the purposes of the statutory definition.

I dissent.

WOOD, J., joins in this dissent.

*Taylor Law Partners, LLP*, by: *William B. Putman*, for appellant.
*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellee.