BRANDON J. HARRISON, Judge
Terry and Lorene Wyatt's divorce generated this appeal. Their divorce proceedings unfolded over several years and did not go smoothly. The litigation primarily focused on the division of their property. On appeal, Terry argues that the circuit court erred in how it divided the couple's property, its child-support calculation, and the award of attorney's fees to Lorene. We affirm the circuit court.
*799 I. Background
Lorene and Terry married in December 1994, and three children were born of the marriage. Before and during the marriage, Terry was involved in several businesses-three of them are critical to this appeal. Terry formed A-1 Recovery, Inc., in 1992-before his marriage to Lorene. Two other corporations-A-1 Recovery Rental, LLC, and A-1 Recovery Towing & Recovery, Inc.-were formed during the marriage. Of great significance to this appeal is the fact that these various business entities owned most of the property used by the parties-including real estate and vehicles-and were used to pay many of the parties' personal expenses. For example, Terry used corporate funds to pay for household furnishings, personal property, personal legal fees, and food.
Lorene filed for divorce on 17 August 2011, and Terry later counterclaimed for divorce. After Lorene filed for divorce, Terry caused to be filed of record a sales contract allegedly signed on 28 February 2011, wherein A-1 Recovery Rental, LLC, sold 56 Wyatt Lane-the house the parties lived in before their separation-to Billy Joe Studebaker.[1] And on 23 August 2011, Terry sold A-1 Recovery Rental, LLC, to Billy Joe Studebaker. On 4 September 2012, Terry sold A-1 Recovery Towing & Recovery, Inc., to Gerald Kennon. In a separate case before the same circuit court, Lorene attempted to have the conveyances of 56 Wyatt Lane and A-1 Recovery Rental, LLC, to Billy Joe Studebaker set aside as fraudulent. The circuit court refused to set aside those conveyances.
On 24 May 2013, the circuit court entered a divorce decree that adjudicated custody and visitation of Lorene and Terry's minor child-the other two children, twin boys, were over eighteen. By consent and agreement of the parties, the circuit court reserved deciding all issues of property division "due to the unusual circumstances of the parties' property division."
On 6 January 2016, three years after the circuit court had granted the parties' divorce, the circuit court entered a lengthy order and judgment that dealt with property, child support, spousal support, and attorney's fees. In dividing the parties' property, the circuit court valued the property as of their separation date in August 2011 finding it "impossible to arrive at a reliable value or composition of the marital estate after that date."
Lorene successfully argued at trial that she was entitled to a portion of the value of A-1 Recovery, Inc.-a corporation formed before the parties' marriage. Applying established precedent, the circuit court found that Lorene contributed to the growth of A-1 Recovery, Inc., and awarded her $412,765, which represented one-half of the marital value of A-1 Recovery, Inc., and its wholly owned corporations. Additionally, the circuit court determined that Terry was operating the corporations as his alter ego and pierced the corporate veil. On child support, the circuit court imputed $12,833.73 in monthly income to Terry when calculating his obligation. Finally, the circuit court awarded Lorene $31,950 in attorney's fees. Terry timely appealed the circuit court's order and judgment.
Here, Terry argues the circuit court erred by (1) failing to divide the marital property when the divorce was granted; (2) treating A-1 Recovery, Inc., as marital property; (3) valuing the marital property as of the parties' separation date; (4) piercing the corporate veil; (5) imputing income when calculating his child-support obligation;
*800 and (6) awarding attorney's fees to Lorene.
II. Property Division
We review divorce cases de novo. Moore v. Moore , 2016 Ark. 105, 486 S.W.3d 766. The circuit court's findings pertaining to division of property are affirmed unless they are clearly erroneous or against the preponderance of the evidence. Id. The division of property itself is also reviewed and the same standard applies. Id. A finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. Skokos v. Skokos , 344 Ark. 420, 40 S.W.3d 768 (2001). Our court gives due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given to their testimony. Myrick v. Myrick , 339 Ark. 1, 2 S.W.3d 60 (1999).
We first address whether the circuit court erred by failing to divide the marital property when the divorce was granted. The parties' divorce decree was entered on 24 May 2013, and by consent of the parties, the decree specifically reserved the issues of property division. It was not until 6 January 2016, however, that the circuit court entered a judgment disposing of the parties' property.
Arkansas Code Annotated section 9-12-315(a)(1)(A) (Repl. 2015) states that "at the time a divorce decree is entered all marital property shall be distributed." Some exceptions have been established by supreme court cases. One exception allows parties who specifically agree to postpone the division of property to do so. See Forrest v. Forrest , 279 Ark. 115, 649 S.W.2d 173 (1983) (applying essentially the same statutory language in an earlier iteration of what is now Ark. Code Ann. § 9-12-315(a)(1)(A) ). So, the caselaw authorizes Lorene and Terry's agreement to delay the disposition of their property.
Terry contends that this caselaw should be overruled in favor of fidelity to the plain language of the statute. That is always a good argument to make, but we cannot overrule a supreme court case. Be that as it may, any alleged error was invited by both parties, and "it is fundamental that, pursuant to the doctrine of invited error, an appellant cannot request a ruling ... and then complain of that ruling on appeal." Security Pac. Hous. Servs., Inc. v. Friddle , 315 Ark. 178, 182, 866 S.W.2d 375, 377 (1993). We decline to reverse on this point.
Next, we consider Terry's argument that the circuit court erred by valuing the property as of the parties' separation date-August 2011-rather than the date of their divorce in May 2013.
The circuit court explained that it divided the parties' property as of their separation date because, through the actions of Terry, "it became impossible to arrive at a value or composition of the marital estate" after that date. The circuit court specifically referenced in its order an email by Terry in which he stated, "[T]his one is going to cost her, I moved all the property, our house, and all the assets out of my name this time and she just figured out that she is getting nothing!!"
Arkansas Code Annotated section 9-12-315(a)(1)(A) states that marital property "shall" be distributed at the time a divorce decree is entered. But the main purpose of the property-division statute is to enable the circuit court to make a division of property that is fair and equitable under the circumstances. See Hoover v. Hoover , 70 Ark. App. 215, 16 S.W.3d 560 (2000). A circuit court has broad powers to distribute property to achieve an equitable *801 distribution. See Hodges v. Hodges , 27 Ark. App. 250, 770 S.W.2d 164 (1989).
Lorene urges that this court should uphold the circuit court's decision to divide the parties' property as of their date of separation, and we agree. The circuit court's findings clearly establish that it found Terry's unilateral actions of disposing of property before the date of divorce were done specifically with Lorene's detriment in mind. We hold that those findings are not clearly erroneous, and we refuse to reverse. The circuit court valued the parties' marital property as of the date of their separation because it found using this date was the only means to achieve a fair and equitable result. Stated in practical terms, nothing is gained by ordering the circuit court to do something that it has plainly said it cannot do given the proof the parties placed before it and the meandering and complicated nature of this case.
Now we turn to whether the circuit court erred by piercing the corporate veil. Simply put, the circuit court found that Terry had commingled the assets of the marital estate with those of his corporations such that he abandoned the corporate form, and his corporations became his alter egos.
As a general principle, a corporation and its stockholders are separate and distinct entities, even though a stockholder may own the majority of the stock. Thomsen Family Trust v. Peterson Family Enters., Inc. , 66 Ark. App. 294, 989 S.W.2d 934 (1999). A stockholder does not acquire any estate in the property of a corporation by virtue of his or her stock ownership; the full legal and equitable title thereto is in the corporation. Id. But when special circumstances warrant, a court may disregard the corporate façade when the corporate form has been abused to the injury of a third party. Anderson v. Stewart , 366 Ark. 203, 234 S.W.3d 295 (2006). The doctrine of piercing the corporate veil is founded in equity and is applied to prevent an injustice. Id.
Terry argues that there is no reported case in Arkansas in which the corporate veil has been pierced in a domestic-relations case, so Arkansas does not allow for piercing of the corporate veil in divorce actions. He cites Dalrymple v. Dalrymple ; a case in which piercing the corporate veil was discussed in the context of a divorce. 74 Ark. App. 372, 47 S.W.3d 920 (2001). In Dalrymple , the appellant argued that the circuit court erred by refusing to pierce the corporate veil. The Dalrymple court held that there was no evidence that the appellee abused the corporate form and therefore no basis to treat appellee and the corporation as one entity. We interpret Dalrymple to mean that Arkansas courts contemplate that the corporate veil may be pierced in divorce cases when there has been abuse of the corporate form.
Do the facts support the circuit court's finding? Our law regarding piercing the corporate veil requires a finding that the corporate form has been abused to the injury of a third party. Anderson v. Stewart , 366 Ark. 203, 234 S.W.3d 295 (2006). We use a clearly-erroneous standard of review to evaluate whether the corporate veil was properly pierced. Id. ; Skokos v. Skokos , 344 Ark. 420, 40 S.W.3d 768 (2001).
Whether the corporate veil may be pierced is a fact-dependent and credibility-based decision. Here, there is sufficient evidence to support the circuit court's finding that Terry illegally abused the corporate form to Lorene's detriment. The evidence demonstrated that Terry was using corporate funds to pay for many personal expenses, including real estate, vehicles, meals, and clothing. This was to Lorene's detriment because it looked like he had *802 limited personal funds available for child support and for property division when, in fact, he seemingly had broad access to his corporate entities' largesse to use for his personal expenses. We hold that it was not clearly erroneous to pierce the corporate veil given this record.
Terry also argues that the circuit court erred by piercing the corporate veil because it made no finding of injury to Lorene. Unless the contrary can be shown, we presume that the circuit court acted properly and made such findings of fact as were necessary to support its judgment. Curry v. Pope Cty. Equalization Bd. , 2011 Ark. 408, 385 S.W.3d 130. There is sufficient evidence of injury to Lorene to affirm the circuit court's ruling. Before the divorce proceedings were initiated, Lorene had access to large amounts of money because of the way in which Terry operated his businesses. The evidence supports that this changed when Terry filed for divorce; and Lorene's lifestyle was affected as a result.
Finally, Terry argues that res judicata prevented the circuit court from piercing the corporate veil because the circuit court had previously ruled that the conveyances of certain corporations to other people were not fraudulent. The circuit court never ruled on this question. This court has made it clear that it will not review a matter on which the circuit court has not ruled. TEMCO Constr., LLC v. Gann , 2013 Ark. 202, 427 S.W.3d 651. We decline to reverse on this basis.
Because we affirm the circuit court's decision to pierce the corporate veil, we now discuss the practical effect of our ruling. By piercing the corporate veil, each entity-A-1 Recovery, Inc.; A-1 Recovery Rental, LLC; and A-1 Recovery Towing & Recovery, Inc.-operated as Terry's alter ego through the duration of the parties' marriage. So each entity-regardless of whether it was formed before the marriage, a wholly-owned subsidiary of a corporation formed before the marriage, or an entity formed during the marriage-is marital property subject to division. The circuit court did not err by awarding Lorene one-half of the value of each of these corporate entities.
Because we hold that the circuit court's decision to pierce the corporate veil must be affirmed, we need not address Terry's final argument in support of reversal of the division of property-that the circuit court erred by treating A-1 Recovery, Inc., as marital property. We acknowledge that the circuit court relied on Layman v. Layman , 292 Ark. 539, 731 S.W.2d 771 (1987) when it reached its decision to award Lorene a portion of A-1 Recovery, Inc., as her marital property and that our supreme court overruled Layman after the January 2016 order was entered by its decision in Moore, supra. Nevertheless, we may affirm the circuit court when it reaches the right result though it announced the wrong reason. Dunn v. Westbrook , 334 Ark. 83, 971 S.W.2d 252 (1998). Because we affirm the circuit court's decision to award Lorene one-half of the interest in A-1 Recovery, Inc. based on the piercing-the-corporate-veil doctrine, we decline to reverse because the circuit court relied on Layman , which Moore overruled while this appeal was pending.
Having found no reversible error, we affirm the circuit court's division of property in this appeal.
III. Child Support
Terry also challenges the circuit court's child-support determination in which it imputed income to him based on his lifestyle. We review the child-support determination de novo on the record. Troutman v. Troutman , 2017 Ark. 139, 516 S.W.3d 733. Under our standard of *803 review, we do not reverse a finding of fact by the circuit court unless it is clearly erroneous. Id. But we do not defer to a circuit court's conclusion of law. Id.
Administrative Order No. 10 sets our state's child-support guidelines. Its definition of income is intentionally broad and designed to encompass the widest range of sources for the support of minor children. Riddick v. Harris , 2016 Ark. App. 426, 501 S.W.3d 859. Administrative Order No. 10(III)(d) permits a circuit court to impute income under certain circumstances, like when the payor is living a lifestyle that does not comport to that of his reported wages.
Here, the circuit court imputed to Terry a monthly income of $12,833.73, making his monthly child-support obligation $1,865.95. The circuit court calculated Terry's imputed monthly income based on his monthly salary and on the value of personal benefits that were paid for by a corporation. These benefits include, but are not limited to, payments for a truck, a boat, utilities, and satellite television; in addition, the circuit court imputed income for the fair market rental value of 56 Wyatt Lane-the house in which Terry lived. Terry takes issue with the ruling and contends that he received the mentioned benefits due to the charity of others and that these benefits should not be used to calculate his child-support obligation. There is evidence to dispute his claim, and significantly, the circuit court found that Terry was not a credible witness. We give due deference to a circuit court's position to determine the credibility of witnesses and the weight to be given to their testimony. Troutman, supra.
Terry also argues that the circuit court erred by including as income the payments made on a boat that Terry did not own. We disagree. Although the evidence demonstrates that the boat was seized by repossession, Gerald Kennon purchased the boat after it had been repossessed. Further evidence indicated that Terry was using the boat as his own. Evidence demonstrated that it was parked at 56 Wyatt Lane, it was named after Terry and Lorene's son, and only Terry used it. We cannot say that the circuit court clearly erred by finding that the boat payments should be included in his income calculation.
Finally, Terry argues that he cannot pay his child-support obligation because the judgment in this case has seriously hindered his ability to work. This argument would be better suited for a motion to reduce child support filed with the circuit court. Based on the evidence available to the circuit court when the decision was reached, we affirm the circuit court's order setting child support.
IV. Attorney's Fees
As a final argument on appeal, Terry briefly challenges the circuit court's award of $31,950 in attorney's fees to Lorene. Arkansas Code Annotated section 9-12-309 permits the award of attorney's fees in divorce cases. These fees may be awarded as a matter of equity. See generally Webb v. Webb , 2014 Ark. App. 697, 450 S.W.3d 265.
Terry's sole argument on this issue is that, should he prevail on any of his other arguments in support of reversal, the equities have changed, and the attorney-fee award should be reevaluated by the circuit court. Because we hold that Terry does not prevail on any of his preceding arguments on appeal, we also affirm the award of attorney's fees.
Affirmed.
Klappenbach and Brown, JJ., agree.

Studebaker was a friend of Terry's. He died while this case was pending.