Cite as 2026 Ark. App. 206

# ARKANSAS COURT OF APPEALS
### DIVISION IV
No. CV-25-213

| | |
|---|---|
| MARK COWAN<br>　　　　APPELLANT/CROSS-APPELLEE<br><br>V.<br><br>REBECCA COWAN<br>　　　　APPELLEE/CROSS-APPELLANT | Opinion Delivered April 1, 2026<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FDR-22-725]<br><br>HONORABLE DIANNA HEWITT LADD, JUDGE<br><br>REVERSED AND REMANDED ON DIRECT APPEAL; AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON CROSS-APPEAL |

**STEPHANIE POTTER BARRETT, Judge**

Mark Cowan, appellant/cross-appellee ("Mark"), appeals from a divorce decree entered by the Sebastian County Circuit Court contending that the circuit court erred by awarding his wife one-half of the gross amount of his 2021 and 2022 bonuses. Appellee/cross-appellant, Rebecca Cowan ("Rebecca"), also appeals the order, arguing that the circuit court erred (1) in not awarding her a proportionate share of Mark's 2024 bonus and (2) in limiting her claim for alimony. We reverse and remand on direct appeal and reverse and remand in part and affirm in part on cross-appeal.

Mark and Rebecca were married on July 31, 2010. The parties separated in August 2022. They have one minor child ("MC") (DOB: 07/24/12) together. On October 17, 2022, Rebecca filed a complaint for divorce against Mark. Mark filed both an answer to the complaint for divorce and a counterclaim for divorce on October 25, 2022.

On December 1, 2022, Rebecca filed an amended complaint for divorce realleging the statements in her previous complaint for divorce and requesting that Mark be ordered to pay temporary and permanent alimony to her due to the disparity in the parties' incomes. That same day, Mark filed an answer to the amended complaint for divorce. Rebecca filed a second amended complaint for divorce on March 29, 2023, which Mark filed an answer to on April 3, 2023.

On June 29, 2023, a temporary hearing was held by the circuit court. The parties were awarded temporary joint custody of MC. Mark was ordered to pay monthly child support of $829 as well as temporary monthly spousal support of $1,200.

The circuit court held a final divorce hearing on December 11, 2023. At the outset of the hearing, the parties declared they had reached an agreement on child custody and child support.[1]

Rebecca testified that she works in accounting and intends to obtain her CPA license. She stated she has a bachelor's degree. Her affidavit of financial means reflected a monthly

---

[1]The parties litigated additional issues concerning the division of real property, personal property, accounts, and nonmarital property that are not relevant to the issues raised on appeal and are therefore not addressed in this opinion.

income of $5,833. Mark's affidavit of financial means reflected a monthly income of $12,086. Rebecca testified that she previously earned approximately $144,000 in 2014, but that amount included a severance payment rather than her base salary. Her base salary was $70,000. Mark's base salary was $189,765. At the time of the hearing, she was forty-seven years old, and Mark was fifty-two years old.

The parties also presented evidence regarding bonuses Mark received during the marriage. Mark received an $80,000 bonus in 2022 and a $60,000 bonus in 2023. Rebecca testified that she did not learn about the bonuses until she obtained Mark's bank records through a subpoena, and she did not receive any portion of them. She requested one-half of the marital portion of both bonuses.

Mark acknowledged that he had received bonuses over the last seven years. He stated that bonuses were not a part of his regular salary and that the $80,000 and $60,000 figures represented the gross amounts. He explained that a portion of each bonus was deposited into his retirement account, taxes were withheld, and the remaining amounts were deposited into his bank account. As a result, the net amount he received from the $80,000.00 bonus was $46,435.32, and the net amount he received from the $60,000.00 bonus was $32,939.60. Both parties introduced Mark's bank statements into evidence, which reflected the net amounts deposited into his account.

Mark testified that Rebecca previously worked for PricewaterhouseCoopers and later became the director of internal audit for Golden Living or Beverly. He further testified that when Rebecca was not employed, it was because she chose not to work.

3

On June 6, 2024, the circuit court entered a letter order setting forth its findings and rulings from the December 2023 hearing. Rebecca moved for reconsideration and/or clarification on June 17, 2024. Mark moved for clarification on June 18, 2024. A subsequent hearing was held by the circuit court on June 18, 2024, regarding clarifications and summer child-care costs. A divorce decree was entered on September 27, 2024.

In the divorce decree, the circuit court found that Rebecca had previously earned more than $100,000 a year but, at the time of the hearing, she earned $5,833 a month while Mark earned on average $17,250 a month. The circuit court noted that Rebecca holds a bachelor's degree and has completed the educational requirements to sit for the CPA examination but must study before taking the test. At the time, Rebecca was 47 years old, and Mark was 52 years old. After considering the parties' incomes, earning capabilities, the parties' ages, and the division of property, the circuit court awarded Rebecca rehabilitative monthly alimony of $1,200 for six months.

The decree also awarded Rebecca one-half of the marital portion of Mark's EBSCO Savings and Profit Sharing Plan, representing the funds accrued from the date of the parties' marriage through December 11, 2023, including gains and losses.

The decree further reflects that after the parties separated, Mark received an $80,000 performance bonus for the period July 1, 2021, through June 30, 2022; and a $60,000 performance bonus for the period July 1, 2022, through June 30, 2023. The court awarded Rebecca $70,000, representing her one-half of those bonuses, and made her responsible for any tax consequences associated with the $70,000. The circuit court declined to award

4

Rebecca any interest in Mark's bonus for the period July 1, 2023, through June 30, 2024, because he had not yet received the bonus for that performance period, and it was not vested.

Mark filed a motion for reconsideration of divorce decree on October 2, 2024, alleging that Rebecca should not have received one-half of the gross amount of his 2021 and 2022 bonuses. Rebecca filed a motion for reconsideration on October 7, 2024, alleging that she was entitled to reimbursement for funds Mark used for his vehicle, an equal division of certain marital property including furniture, funds removed from marital accounts, Mark's 2024 bonus earned during the marriage, division of the parties' retirement accounts as of the date of the decree, and monthly alimony of $1,200 for two years.

On November 6, 2024, the circuit court entered an order denying Rebecca's motion for reconsideration, and by operation of law, Mark's motion for reconsideration was deemed denied on November 1, 2024. Mark timely appealed, and Rebecca timely cross-appealed.

Arkansas appellate courts review divorce cases de novo on the record. *Moore v. Moore*, 2019 Ark. 216, at 6, 576 S.W.3d 15, 20. The circuit court's findings pertaining to the division of property will not be reversed unless they are clearly erroneous or against the preponderance of the evidence. *Id.* A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* at 6–7, 576 S.W.3d at 20. This court also gives due deference to the circuit court's determination of the credibility of the witnesses and the weight to be given to their testimony. *Id.*

I. *Direct Appeal*

For his sole point on direct appeal, Mark argues that the circuit court erred by giving Rebecca one-half of the gross amount of his 2021 and 2022 bonuses.[2] He specifically contends that the circuit court failed to take into consideration the taxes withheld from the bonuses and the portion deposited into his retirement account.

In a divorce case, the circuit court is vested with a measure of flexibility in apportioning the marital assets, and the critical inquiry is how the total assets are divided. *Gould v. Gould*, 2023 Ark. App. 118, at 8, 662 S.W.3d 676, 683. When dividing marital property, the circuit court has broad powers to distribute property in order to achieve an equitable distribution. *Goodson v. Bennett*, 2018 Ark. App. 444, at 14, 562 S.W.3d 847, 858 (citing *Keathley v. Keathley*, 76 Ark. App. 150, 157, 61 S.W.3d 219, 224 (2001)). The property-division statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Jones v. Jones*, 2014 Ark. 96, at 7, 432 S.W.3d 36, 40–41.

"Marital property" is all property acquired by either spouse subsequent to the marriage, except as otherwise provided by the statute. *See* Ark. Code Ann. § 9-12-315(b) (Repl. 2020). Generally, any bonus that accrues during the marriage is marital property

---

[2]Mark refers to the bonus for July 1, 2021, through June 30, 2022, as the 2021 bonus and the bonus for July 1, 2022, through June 30, 2023, as the 2022 bonus. Rebecca refers to the bonus for July 1, 2023, through June 30, 2024, as the 2024 bonus. The bonuses will be referenced as such throughout this opinion.

6

subject to division. *Haley v. Elkins*, 2019 Ark. App. 247, at 9, 576 S.W.3d 111, 117 (citing *Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987)).

Although the circuit court has broad discretion in dividing marital property, its division must be supported by the evidence. Here, the record established only the net bonus deposits, yet the circuit court divided the bonuses using gross figures that did not reflect funds actually received by Mark after taxes and other deductions.

At trial, Mark testified that he netted $46,435.32 from the 2021 bonus and $32,939.60 from the 2022 bonus after taxes and retirement contributions. He also introduced bank statements reflecting the net amounts deposited into his account. However, the record does not establish the specific amounts withheld for taxes or contributed to Mark's retirement accounts. Although Mark testified that portions of the bonuses were used for those purposes, he introduced no documentation showing the specific amounts. The only documentary evidence introduced regarding the bonuses consisted of Mark's bank statements reflecting the net amounts deposited.

Despite the absence of evidence establishing the amounts withheld or contributed to retirement, the circuit court divided the bonuses using the gross figures of $80,000 and $60,000 reflected in the decree. The record reflects, however, that taxes and deductions were withheld from the bonuses before the funds were deposited.

In *Janjam v. Rajeshwari*, 2020 Ark. App. 448, at 19, 611 S.W.3d 202, 213, the circuit court reduced the husband's bonus by 30 percent to account for taxes before dividing the remainder. Although the issue was not preserved for appeal, the decree in that case illustrates

7

an approach that accounts for tax consequences before distributing a bonus. *See id.* Therefore, dividing the bonuses using their gross figures required Mark to pay Rebecca funds that were never actually received. At the same time, Rebecca incurred no tax consequences for those amounts.

While a circuit court has broad discretion in dividing marital property, its valuation of marital assets must be supported by the evidence in the record. Here, the record does not establish that Mark actually received those gross amounts; therefore, the circuit court's reliance on these figures resulted in the division of amounts not shown by the record to be a part of the marital estate. To the extent any portion of the bonuses was contributed to Mark's EBSCO Savings and Profit Sharing Plan, those funds were already subject to division through the decree's award of one-half of the marital portion of that account.

While this court defers to the circuit court's superior position to assess credibility of witnesses and the weight to be accorded to their testimony, the issue presented here is whether the evidence supports the circuit court's reliance on the gross amounts of Mark's bonuses when determining the marital estate. *See Moore*, 2019 Ark. 216, at 6, 576 S.W.3d at 20. On this record, this court is left with a definite and firm conviction that a mistake has been made. *Id.* Accordingly, the circuit court clearly erred by relying on the gross bonus figures, and we reverse and remand for recalculation of Rebecca's share of the 2021 and 2022 bonuses using the net bonus amounts.

II. *Cross-Appeal*

On cross-appeal, Rebecca contends that the circuit court erred by failing to award her a proportionate share of Mark's 2024 bonus. Mark argues that the 2024 bonus should not be divided because there was no evidence that the bonus was vested or even awarded at the time of the divorce hearing.

Arkansas Code Annotated section 9-12-315(a)(1)(A) provides that, at the time a divorce decree is entered, all marital property shall be distributed one-half to each party unless the court finds the division to be inequitable. In this case, the classification of the 2024 bonus presents two related issues: (1) the date the parties' divorce become effective and (2) whether the bonus accrued during the marriage.

For purposes of dividing marital property, the controlling date is the date the divorce decree is entered. In *Allen v. Allen*, 99 Ark. App. 292, 259 S.W.3d 480 (2007), this court held that the effective date of the parties' divorce was the date the decree was entered, not the date of the divorce hearing. Accordingly, the wife was entitled to one-half of the husband's retirement benefits that vested after the hearing. *Id.* at 295–96, 259 S.W.3d at 483. Here, the final hearing occurred in December 2023, but the divorce decree was not entered until September 2024. The parties therefore remained married until the entry of the decree.

The remaining question is whether the bonus accrued during the marriage. In *Wilson v. Wilson*, 294 Ark. 194, at 200, 741 S.W.2d 640, 644 (1987), the Arkansas Supreme Court held that a bonus awarded five days after the divorce was marital property because it had been accrued and acquired during the marriage. The court explained that the husband had obtained an accrued or fixed interest in the bonus based on the work he produced during

9

the marriage. *Id.* In *Schumacher v. Schumacher*, 66 Ark. App. 9, 986 S.W.2d 883 (1999), this court recognized that a bonus earned during the marriage may constitute marital property even though the amount had not yet been finalized at the time of the divorce hearing. Thus, a bonus need not be vested or paid at the time of the divorce hearing to qualify as marital property if it was earned during the marriage.

Here, the fiscal year applicable to Mark's bonus ended in June 2024 while the parties were still married. The bonus was based on performance during the 2023–2024 fiscal year and before entry of the decree. Accordingly, the bonus was earned during the marriage and constituted marital property.

Mark relies on *Wyatt v. Wyatt*, 2018 Ark. App. 177, 545 S.W.3d 796, where this court affirmed the circuit court's decision to value the marital property as of the parties' separation date because the circuit court found that the husband had unilaterally disposed of marital assets before the decree and that using the separation date was the only means to achieve a fair and equitable result. *Id.* at 5–6, 545 S.W.3d at 801. In *Wyatt*, the earlier valuation date was therefore necessary to prevent the husband from benefiting from his conduct and to achieve an equitable distribution. *Id.* Nothing in the record here suggests that either party dissipated marital assets during the pendency of the divorce in a manner that would justify valuing Mark's compensation before the entry of the divorce decree. Accordingly, *Wyatt* does not support excluding the 2024 bonus from the marital estate when the bonus accrued during the marriage and before the decree was entered. *Id.*

Under Arkansas Code Annotated section 9-12-315(a)(1)(A), the 2024 bonus is marital property, and Rebecca was entitled to her marital portion. Accordingly, we reverse and remand on cross-appeal for the circuit court to determine her marital share of the 2024 bonus.

Rebecca also cross-appeals the circuit court's alimony award. Rebecca contends that the circuit court erred in limiting her claim for alimony.

A decision regarding alimony lies within the circuit court's sound discretion and will not be reversed on appeal absent an abuse of that discretion. *Howard v. Howard*, 2024 Ark. App. 566, at 5, 701 S.W.3d 48, 52. The circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Id.*

Under Arkansas Code Annotated section 9-12-312(a) (Repl. 2020), a circuit court may order alimony that is "reasonable from the circumstances of the parties and the nature of the case." In determining whether to award alimony, the primary consideration is the financial need of the payee spouse and the payor spouse's ability to pay. *See Trucks v. Trucks*, 2015 Ark. App. 189, at 3, 459 S.W.3d 312, 314; *Foster v. Foster*, 2016 Ark. 456, at 9, 506 S.W.3d 808, 814–15. Rehabilitative alimony provides support for a specific period of time to allow the recipient, through reasonable efforts, to become self-supporting. *See Carr v. Carr*, 2019 Ark. App. 513, at 9–10, 588 S.W.3d 821, 827 (citing *Rawls v. Yarberry*, 2018 Ark. App. 536, at 9, 564 S.W.3d 537, 543).

The record shows that the circuit court made specific findings regarding the parties' income and earning capabilities. It noted Rebecca's prior six-figure earnings, her current

employment and her eligibility to sit for the CPA exam, Mark's higher income, the parties' ages, and employment outlooks. The circuit court also considered the division of property and determined that six months of rehabilitative alimony would allow Rebecca time to prepare for the CPA examination. The limited-duration award falls within the circuit court's discretion.

This court does not reweigh the evidence and testimony on appeal, substitute its judgment for that of the circuit court, or reassess witness credibility. *See Baker v. Baker*, 2023 Ark. App. 499, at 10, 678 S.W.3d 608, 613; *Carr*, 2019 Ark. App. 513, at 4, 588 S.W.3d at 824. Given the discretionary nature of alimony awards and the evidence presented, this court cannot say the circuit court abused its discretion by awarding Rebecca alimony of $1,200 a month for a six-month period. We affirm the circuit court's alimony award.

Reversed and remanded on direct appeal; affirmed in part and reversed and remanded in part on cross-appeal.

KLAPPENBACH, C.J., and BROWN, J., agree.

*Gean, Gean & Gean*, by: *David Charles Gean*, for appellant.

*Weimar Law Office*, by: *DeeAnna Weimar*, for appellee.