Jorge L. HERNANDEZ *v.* Margaret L. HERNANDEZ

07-343                                                265 S.W.3d 746

Supreme Court of Arkansas
Opinion delivered October 25, 2007

*J. Sky Tapp,* for appellant/cross-appellee.

*The Farrar Firm,* by: *Michelle M. Strause* and *Philip B. Montgomery,* for appellee/cross-appellant.

ANNABELLE CLINTON IMBER, Justice. The instant appeal arises from a divorce decree entered by the Garland

County Circuit Court. Appellant Jorge Hernandez appeals the circuit court's ruling that certain funds Jorge received from his former employer were marital property and not a gift. Margaret cross-appeals the circuit court's unequal division of the proceeds from those funds.

In 1983, Jorge began working for Sante Fe Plastics in California. Christopher Rakhshan was his supervisor at Santa Fe Plastics for several years. In 1993, when Rakhshan moved to Hot Springs, Arkansas, and began Delta Plastics, he asked Jorge to move to Arkansas and work for the company. Jorge continued as a Delta Plastics employee until 2005 when the company was sold to Rexum Plastics.

Jorge and Margaret married in 1999. Because Jorge had been so loyal to the company, Rakhshan and the other owners of Delta Plastics decided to reward him and some other employees in 2003. The owners gave Jorge personal checks totaling approximately $10,000. Jorge then immediately endorsed the checks and re-turned them to the owners in exchange for 1,000 shares of common stock and 2,000 restricted incentive shares in Delta Plastics.

Jorge filed for divorce on September 8, 2005, and the couple separated. Shortly thereafter, Rexum purchased Delta Plastics through a leveraged stock buy-out, and Jorge's shares dramatically increased in value. Due to the buy-out, Jorge was required to redeem his stock certificates, and, on September 21, 2005, he received $458,591.70 for his shares. Jorge then deposited the proceeds from his shares into his separate personal checking account. Due to the pending divorce, Jorge and Margaret filed separate income tax returns for 2005, and Jorge paid the capital gains tax on the stock proceeds.

During the final divorce hearing before the circuit court, Jorge argued that the stock proceeds were not marital property because he received the funds through a check written only to him, the funds were never placed in the couple's joint checking account, and the stocks were only in his name. To corroborate his assertions that the funds were a gift, Jorge presented the deposi-tions of Christopher Rakhshan and Carl Wellman. In his deposi-tion, Rakhshan insisted that the funds were given to Jorge as a gift in appreciation of his service to Delta Plastics and were not part of Jorge's compensation plan. Wellman, the former CFO of Delta Plastics, stated that the funds given to Jorge did not come from the company or the shareholders, and instead, came only from the

owners personally. Marla Lammers, a CPA hired by Margaret, testified at the hearing that due to the employment relationship between Jorge and the Delta Plastics owners, the funds would not be considered a gift under the Internal Revenue Code and, therefore, would be considered income.

On December 29, 2006, the circuit court entered the divorce decree, in which the court determined that the disputed funds were marital property and not a gift. Due to the length of the marriage in comparison with the length of Jorge's employment and the contribution of each spouse to the acquisition of the stock proceeds, the circuit court decided to divide the stock proceeds unequally, thereby awarding Margaret only $85,335.38. However, the decree also stated that Jorge would receive a credit against the amount owing to Margaret for the taxes that he paid on that amount, and the circuit court judge made a handwritten notation that a hearing would be held on the tax-credit issue on January 8, 2007.

A hearing was never held on the tax-credit issue, but on January 9, 2007, Jorge filed his notice of appeal. On January 11, 2007, the circuit court sent the parties a letter order stating the exact amount of Jorge's tax credit at $17,293.51. On February 12, 2007, the court entered an amended and supplemented divorce decree reflecting the court's decision as to the tax credit. Margaret filed her notice of cross-appeal on March 13, 2007.

As a threshold matter, we must determine whether we have jurisdiction over the parties' appeals. Before this court assumed the instant case from the Arkansas Court of Appeals, Margaret filed a motion to dismiss Jorge's appeal on the ground that his notice of appeal was untimely. The court of appeals denied her motion, and Margaret now raises the same argument in her brief to this court. Because Margaret's argument concerns our subject-matter jurisdiction over the instant appeal, we can address the issue *sua sponte*. *See Clarendon America Ins. Co. v. Hickok*, 370 Ark. 41, 257 S.W.3d 43 (2007).

Relying on a recent opinion by the court of appeals in *Allen v. Allen*, 99 Ark. App. 292, 259 S.W.3d 480 (2007), Margaret argues that Jorge's notice of appeal was untimely because the initial December 29 divorce decree was not a final order, and he did not file an amended notice of appeal after the February 12 amended and supplemented divorce decree was entered. Specifically, she asserts that because the December 29 decree did not contain a

specific amount for the tax credit and thus did not include a specific amount of stock proceeds that Jorge owed her, the decree did not put the court's directive into execution or end a separable branch of the litigation. Jorge, however, argues that the decree did dispose of a separable branch of the litigation — the issue of whether the funds were a gift.[1]

We have long held that a money judgment must contain a specific dollar amount in order to be executed. *See, e.g., Thomas v. McElroy*, 243 Ark. 465, 420 S.W.2d 530 (1967); *Estate of Hastings v. Planters and Stockmen Bank*, 296 Ark. 409, 757 S.W.2d 546 (1988). Under Ark. R. App. P.–Civil 2(a)(1), an appeal may be taken from a final judgment or decree entered by the circuit court. Ark. R. App. P.–Civil 2(a)(1) (2007). This court has stated that the "test of finality and appealability of an order is whether the order puts the court's directive into execution, ending the litigation or a separable part of it." *Villines v. Harris*, 362 Ark. 393, 397, 208 S.W.3d 763, 766 (2005). However, when the order appealed from reflects that further proceedings are pending, which do not involve merely collateral matters, the order is not final. *Id.*

In *Office of Child Support Enforcement v. Oliver*, 324 Ark. 447, 921 S.W.2d 602 (1996), the chancellor entered an order of arrearage against Oliver but did not fix the amount of arrearage. Instead, the order stated that the OCSE should certify the amount of arrearage within two weeks of the order. *Id.* Our court held that the chancellor's order did not finally resolve the amount of arrearage owed or end the litigation concerning the claim for arrearage. *Id.* In *Morton v. Morton*, 61 Ark. App. 161, 965 S.W.2d 809 (1998), the court of appeals held that a chancellor's divorce decree, which divided the property but held in abeyance the determination of alimony, was not a final order for purposes of appeal. *Id.* Likewise, in *Allen v. Allen, supra*, the court of appeals held that the circuit court's divorce decree was not a final order when the lower court's order acknowledged that the wife owed the husband $40,000 for his interest in her business, but that sum was to be reduced by set-offs in unstated amounts. *Id.*

---

[1] Jorge argues that Margaret's reliance on *Allen v. Allen, supra*, is misplaced because that case only concerned the issue of when the divorce decree was effective. Although the *Allen* court did address the divorce decree's effective date, it also dealt with the question of whether the decree, which stated that the husband was entitled to a $40,000 award with set-offs without listing the exact amount of the set-offs, was a final order. *See id.*

■ Here, as in the cases cited above, the initial divorce decree stated that Margaret was entitled to $85,335.83 subject to reduction by the amount of Jorge's tax credit, and the amount of the tax credit was yet to be determined. The circuit court also made a notation on the decree that a further hearing would be held on the issue. Thus, it is clear from the face of the decree that, while the circuit court had determined the funds were not a gift, the issue was still subject to pending litigation. Accordingly, we dismiss Jorge's direct appeal.[2] Because Margaret did file a timely notice of cross-appeal, however, we will now address the merits of her argument.

For her cross-appeal, Margaret argues that the circuit court erred in unequally dividing the stock proceeds. She asserts that the circuit court based its decision solely on the basis of each party's contribution to the acquisition of the proceeds, and because the circuit court's order does not indicate that the court considered any of the other factors listed in Ark. Code Ann. § 9-12-315(a) (Repl. 2002), the circuit court's ruling was erroneous. Jorge does not offer any argument directly addressing this issue.

We review division-of-marital-property cases *de novo*; however, we will affirm the circuit court's findings of fact unless they are clearly erroneous, or against the preponderance of the evidence; the division of property itself is also reviewed, and the same standard applies. *Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.* In order to demonstrate that the circuit court's ruling was erroneous, the appellant must show that the circuit court abused its discretion by making a decision that was arbitrary or groundless. *Id.*

Under Arkansas Code Annotated § 9-12-315, all marital property shall be divided equally between the parties unless the circuit court finds such a distribution would be inequitable. *See* Ark. Code Ann. § 9-12-315(a)(1)(A) (Repl. 2002). Section 9-12-

---

[2] Under Ark. R. App. P.–Civil 4(a) (2007), when a party files a notice of appeal after an oral decision is announced from the bench but before the written decree is entered, the notice of appeal shall be treated as filed on the day after the decree is entered. In the instant case, however, Rule 4(a) does not apply because no hearing was held on the tax-credit issue and no ruling was made on the issue until January 11, two days after Jorge's January 9 notice of appeal.

315 requires that the circuit court consider the following factors when making an unequal distribution of marital property:

(i) The length of the marriage;

(ii) Age, health, and station in life of the parties;

(iii) Occupation of the parties;

(iv) Amount and sources of income;

(v) Vocational skills;

(vi) Employability;

(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;

(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and

(ix) The federal income tax consequences of the court's division of property.

Ark. Code Ann. § 9-12-315(a)(1)(A)(i)-(ix) (Repl. 2002). When the circuit court divides the property unequally, the circuit court must state its basis and reason for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the circuit court's order. Ark. Code Ann. § 9-12-315(a)(1)(B) (Repl. 2002).

In *Keathley v. Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001), the court of appeals held that while section 9-12-315 requires the circuit court to consider the statutory factors and to state the basis of the unequal division of marital property, the circuit court is not required to list each factor in the order, nor to weigh all factors equally. *Id.* Further, the specific enumeration of the factors within the statute does not preclude a circuit court from considering other relevant factors, where exclusion of other factors would lead to absurd results or deny the intent of the legislature to allow for the equitable division of property. *Id.*

In the instant case, the circuit court gave each party the separate property they brought to the marriage and equally divided all of the marital property, except for the stock proceeds. Instead,

the court calculated the gain on the stock, and determined that Margaret was only entitled to an amount that was proportionate to the length of the marriage as compared to the length of Jorge's employment with Rakhshan and Delta Plastics. The court stated that because the parties were married six of the eighteen years Jorge was employed by Rakhshan, the gains should be divided by three, and then a third of the gains should be divided in half, resulting in Margaret's $85,335.85 share.

Thus, it is clear from the circuit court's order that both the length of the marriage and the contribution of the parties to the acquisition of the stock proceeds formed the basis for the circuit court's decision to divide the property unequally. Contrary to Margaret's argument, the fact that the circuit court did not list all of the statutory factors in the order does not show error because the lower court was not required to list all the factors and was entitled to weigh the factors differently in reaching its decision. *See Keathley v. Keathley, supra.*

Moreover, in *Marshall v. Marshall*, 285 Ark. 426, 688 S.W.2d 279 (1985), this court advocated an approach similar to the one taken by the circuit court in the instant case. In *Marshall*, the chancellor decided to divide the husband's retirement benefits equally when the parties were married only ten of the thirty-five years in which the husband worked for his former employer. *Id.* This court, however, determined that the portion of retirement benefits the husband obtained before the marriage was the husband's separate property and the wife should only receive a proportionate share as reduced by the husband's separate property. *Id.* Thus, given the foregoing reasons, we conclude that the circuit court did not abuse its discretion in dividing the stock proceeds unequally.

Margaret cites the court of appeals's opinion in *Baxley v. Baxley*, 92 Ark. App. 247, 212 S.W.3d 8 (2005), in support of her argument. In *Baxley*, the court of appeals reversed the circuit court because the lower court only considered the contribution of the parties to the acquisition of the marital property when it awarded one spouse the entire amount in an investment account. *Id.* The instant case is distinguishable from *Baxley*. Here, the circuit court's order reflects the court's consideration of more than just the contribution factor. Accordingly, we cannot find error in the circuit court's decision, and we affirm on cross-appeal.

Direct appeal dismissed. Cross-appeal affirmed.