Cite as 2023 Ark. App. 519

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-22-330

|  |  |
|---|---|
| KEITH ALAN DIXON | **Opinion Delivered** November 8, 2023 |
| APPELLANT | APPEAL FROM THE PERRY COUNTY CIRCUIT COURT [NO. 53DR-20-84] |
| V. | |
| HOLLY ANN DIXON | HONORABLE AMY DUNN JOHNSON, JUDGE |
| APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

This divorce case between appellant Keith Alan Dixon and appellee Holly Ann Dixon comes before this court for a second time.  In the first appeal, *Dixon v. Dixon*, 2023 Ark. App. 217, we remanded to settle and supplement the record because the record failed to contain a letter that had been evidently provided by Keith to the trial court regarding the amounts that had been paid toward the loan under which the parties' house was financed.  The record has now been settled and supplemented as ordered, and the supplemental record contains the letter provided by Keith to the trial court, which shows that a total of $199,350.36 had been paid toward the loan.  We now reach the merits of the appeal.

In this appeal from the divorce decree, Keith alleges errors in the distribution of the parties' marital and nonmarital property.  Keith and Holly were married on October 24,

2009, and after a bench trial, they were divorced on October 29, 2021. The divorce decree contained various provisions wherein the trial court divided the parties' property unequally in favor of Holly due, in part, to the trial court's finding that Keith brought substantial assets to the marriage that he will retain after the divorce. With respect to the parties' residence, the trial court awarded the residence to Keith but ordered Keith to pay Holly the full amount of the equity in the home.

Keith now appeals, raising two arguments for reversal. First, Keith argues that the trial court clearly erred in awarding Holly an unequal division of marital property and in awarding her a portion of his nonmarital property without stating the basis and reasons for such division as required by Arkansas Code Annotated section 9-12-315(a) (Repl. 2020). Next, Keith contends that the trial court erred in giving Holly the benefit of a $199,350.36 reduction of debt against the house and states that there is no evidence in the record that the debt was "reduced by any amount and certainly not $199,350.36." As noted, the record as supplemented now contains evidence of the $199,350.36 reduction in debt, which Keith himself provided to the trial court. We disagree with both of Keith's arguments on appeal, and we affirm the divorce decree.

The pertinent facts are as follows. Keith is a medical doctor and had attained substantial nonmarital property prior to the parties' marriage, including $1.9 million in a retirement account and ownership of Dixon Properties, LLC, and Dixon Tree Farms, LLC. Keith testified that he has medical issues and became disabled shortly after the parties' marriage, but he still earns substantial income from the ownership of his companies. Holly

is a dietician, and she had about $44,000 in a retirement account when the parties married, which increased to about $147,000 during the marriage. Holly also started a business called HD Nutrition, LLC, during the marriage. Holly testified that she earns $5000 a month from her business. Keith brought a Cessna airplane into the marriage, and during the marriage, he bought an Audi vehicle and a Porche vehicle. Holly testified that the Audi and Porsche were gifts to her from Keith but Keith disputed this and claimed ownership of both vehicles. Documentation was introduced showing that Keith's net worth is approximately $32 million. This information was provided in a personal financial statement prepared and signed by Keith.

Keith had also acquired substantial real estate prior to the marriage. In 2017, the parties decided to build a house on a tract of Keith's premarital land. According to Keith, he made a $50,000 payment to the builder, and the remaining $546,000 cost to build the house was financed. The $546,000 loan on the house was rolled into a larger loan of $4,485,500 from First Community Bank to one of Keith's companies, Dixon properties, LLC.

Although Keith owns Dixon Properties, LLC, and Dixon Tree Farms, LLC, Holly testified that during the marriage, Keith held her out as a partner in the businesses. Holly stated that "we had always said during our marriage that we were partners and we were going to grow the business," that she always assumed they were "in this together," and that she relied on Keith's representations in believing they were partners. A letter dated November 6, 2019, that was prepared and signed by Keith, states:

3

To Whom It May Concern:

Holly Dixon is a partner in the following LLC.
1- Dixon Properties LLC commercial properties

2- Dixon Tree Farms LLC 1000s of acres of farms

3- Dixon Residential LLC residential properties

She is involved in the daily operations and management of all of these and has been doing this for the past 10 years. If you need a reference please call.

Keith Dixon Senior Partner (501) xxx-xxxx
Mark Dixon CPA/realtor manager of commercial (501) xxx-xxxx
Steve Shirar manager residential (501) xxx-xxxx

Sincerely,
/s/ Keith A. Dixon Senior Partner

Also on November 6, 2019, Mary Kathryn McKenzie, CPA, wrote a letter stating:

I have prepared income tax returns for Holly Dixon for at least ten years. She and her husband have extensive real estate holdings in Dixon Tree Farm, LLC and Dixon Properties, LLC. They are active in the operations and management of these properties.

Holly testified that during the marriage, they lived on earnings from and paid the bills for Dixon Properties, LLC.

At the conclusion of the divorce hearing held on October 12, 2021, the trial court noted that there was an outstanding loan of $546,000 on the marital residence and asked Keith's counsel if he could provide documentation as to how much, if any, had been paid against the loan. Keith's counsel replied, "We can do that, Your Honor." After the trial but before the divorce decree was entered, Keith provided a letter to the trial court from First

4

Community Bank stating that the total debt of $4,485,500 had a remaining balance of $4,286,149.64, meaning that $199,350.36 of the total debt had been paid.[1]

The trial court entered a divorce decree on October 29, 2021, which provides in pertinent part:

> The Court has considered the age, health, and abilities of the parties for the future and finds that: [Keith] is 66 years old, in poor health and disabled. [Holly] is 54 years old, employed and has a good earning potential based on the business she has established. The Court has also considered the amount of income of each party and the assets they brought into the marriage and their overall estates, the liabilities, and the needs of each party, their opportunities to acquire property, the monies and sources of funds spent during the marriage, as well as the intent of money spent by the parties during the marriage in an attempt to balance the equities between the parties. These considerations include the substantial assets that [Keith] brought to the marriage and will retain after the divorce, [Keith's] commingling of nonmarital and marital assets and liabilities during the marriage, and [Keith's] representations to [Holly] regarding the nature of their partnership. As such, the Court is deviating from what would otherwise be an equal division of marital property and awarding some nonmarital property to [Holly] in order to achieve a balance of the equities and the resources that are available to the parties. In so doing the Court orders the following division by the parties:
>
> . . . .
>
> As part of the Court's deviation with regard to the division of marital assets and award of some nonmarital assets, [Holly] is awarded the Cessna airplane; HD nutrition consultants, LLC; [Holly's] entire retirement account at Edward Jones in [Holly's] name; the Porsche and Audi vehicles, with [Holly] to get the Porsche and Audi titled in her name and to assume all present debt going forward, for which she will hold [Keith] harmless; and the equity in the new home on [Keith's] real property. The amount of equity to be determined as follows: each party shall select and engage, at his or her expense, a licensed appraiser to complete an appraisal of the home to exclude the real property, which the Court finds to be nonmarital and owned by [Keith]. [Holly] will select the appraisal that she considers most favorable to her for

---

[1]As previously stated, Keith rolled the note and mortgage on the marital residence into a larger loan of $4,485,500 from First Community Bank to one of Keith's companies, Dixon properties, LLC.

her purposes of calculating the equity to which she is entitled. The equity awarded to [Holly] will be calculated using the selected appraisal, less the outstanding portion of the $546,000 loan applicable to the house. That loan amount is to be further reduced by $199,350.36, which represents all amounts paid toward the consolidated and refinanced First Community Bank loan of $4,485,000, leaving a balance of $346,659.64 to be subtracted from the appraised value of the home. [Keith] shall pay [Holly] the full amount of such equity,[2] if any, and [Holly] will simultaneously execute and deliver a quitclaim deed for the real property to [Keith] within Sixty (60) days of entry of the decree.

. . . .

[Keith] is granted as premarital property all the real estate in his name, Dixon Properties, LLC and all its assets, Dixon Tree Farms, LLC and all its assets, all of [Keith's] Edward Jones accounts, and any and all other personal property and real property not divided specifically by this decree which may be in [Keith's] possession or in his name.

Keith appealed.

On appeal from the divorce decree, Keith argues that the trial court clearly erred in awarding Holly an unequal division of marital property and in awarding her a portion of his nonmarital property without stating the basis and reasons for such division as required by statute. He further argues that the trial court erred in giving Holly the benefit of a $199,350.36 reduction of debt against the house, stating that there is no evidence in the record to support that finding.

---

[2]The trial court included a footnote in the decree stating, "Because the $546,000 in financing for the home was commingled with a larger loan intended to also cover purchases related to [Keith's] businesses, and because both marital and nonmarital funds were used throughout the marriage to make purchases for the benefit of the marriage, the Court is taking into account the equitable considerations set forth [above] in giving [Holly] credit for all payments made toward the consolidated loan, rather than a pro rata share. The Court is also excluding from these calculations the $50,000 advance made to the builder."

6

Domestic-relations cases are tried de novo on appeal, and the appellate court does not reverse a trial court's findings unless they are clearly erroneous. *Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000).

Keith's first argument is that trial court erred in awarding Holly an unequal division of marital property and in awarding her a portion of his nonmarital property without reference to or consideration of Ark. Code Ann. § 9-12-315(a) and without stating the basis and reasons for such division. Arkansas Code Annotated section 9-12-315(a) provides, in pertinent part:

(a) At the time a divorce decree is entered:

(1)(A) All marital property shall be distributed one-half (1/2) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration:

(i) The length of the marriage.
(ii) Age, health, and station in life of the parties;
(iii) Occupation of the parties;
(iv) Amount and sources of income;
(v) Vocational skills;
(vi) Employability;
(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;
(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and
(ix) The federal income tax consequences of the court's division of property.

(B) When property is divided pursuant to the foregoing considerations *the court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the order entered in the matter;*

(2) All other property shall be returned to the party who owned it prior to the marriage *unless the court shall make some other division that the court deems equitable taking into consideration those factors enumerated in subdivision (a)(1) of this section, in which event the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage.*

(Emphasis added.)

Keith argues that the trial court failed to state in the divorce decree its reasons for an unequal distribution of the parties' property, nor did it apply the nine considerations required for a deviation. Keith states that Ark. Code Ann. § 9-12-315(a) requires more than a mere formality of the court stating it is balancing the inequities. Keith asserts that the trial court awarded Holly marital property acquired during the marriage, including her business and the increase in her retirement account. Keith further states that Holly was awarded a portion of his nonmarital property, which included the Cessna airplane and the equity in the house that he states was generated with funds that were borrowed by Keith alone. Keith argues that because the trial court did not explain its reasons for its unequal division of property, this case should be reversed and remanded with directions to revise the divorce decree. For the following reason, we disagree.

A trial court has broad powers to distribute both marital and nonmarital property to achieve an equitable division. *Wilson v. Wilson*, 2016 Ark. App. 256, 492 S.W.3d 534. In accordance with Ark. Code Ann. § 9-12-315(a)(1), at the time of entry of a divorce decree, the trial court shall distribute all marital property one-half to each party unless it is

determined that such distribution would be inequitable; if the property is not divided equally, then the trial court must state the reasons and bases for not doing so, and the bases and reasons should be recited in the order. In accordance with Ark. Code Ann. § 9-12-315(a)(2), all nonmarital property shall be returned to the party who owned it prior to the marriage unless the court shall make some other division it deems equitable taking into consideration the factors enumerated in subdivision (a)(1) of the statute, and the trial court must state in writing its reasons and bases for such division.

However, while the trial court must consider the statutory factors and state its reasons for dividing property unequally, the court is not required to list each factor in its order nor is it required to weigh all the factors equally. *Hernandez v. Hernandez*, 371 Ark. 323, 265 S.W.3d 746 (2007). Further, the specific enumeration of the factors within the statute does not preclude a trial court from considering other relevant factors, where exclusion of other factors would lead to absurd results or deny the intent of the legislature to allow for the equitable division of property. *Id.* The list of statutory factors is not exhaustive nor is proof of every statutory factor required. *Barron v. Barron*, 2015 Ark. App. 215.

Contrary to Keith's argument, it is patently clear from the divorce decree that the trial court did make the requisite findings stating its reasons and bases for dividing the marital property unequally and awarding Holly a portion of Keith's nonmarital property. The divorce decree states:

> The Court has . . . considered the amount of income of each party and the assets they brought into the marriage and their overall estates, the liabilities, and the needs of each party, their opportunities to acquire property, the monies and sources of funds

9

spent during the marriage, as well as the intent of monies spent by the parties during the marriage in an attempt to balance the equities between the parties. *These considerations include the substantial assets that the [Keith] brought to the marriage and will retain after the divorce, [Keith's] commingling of nonmarital and marital assets and liabilities during the marriage, and [Keith's] representations to [Holly] regarding the nature of their partnership.* As such, the Court is deviating from what would otherwise be an equal division of marital property and awarding some nonmarital property to Defendant in order to achieve a balance of the equities and the resources that are available to the parties.

(Emphasis added.) We hold that the findings recited above were in compliance with the requirements of Ark. Code Ann. § 9-12-315(a).

To the extent Keith may also be arguing that the trial court's distribution of the marital and nonmarital property was inequitable and clearly erroneous, we cannot agree. The overriding purpose of section 9-12-315 is to enable the trial court to make a division of property that is fair and equitable under the circumstances; mathematical precision is not required. *Copeland v. Copeland*, 84 Ark. App. 303, 139 S.W.3d 145 (2003). The trial court is vested with a measure of flexibility in apportioning the total assets held in the marital estate upon divorce. *Id.* In awarding Holly an unequal division of the property, the trial court considered the extensive assets that Keith brought into the marriage and would retain after the divorce, including substantial real estate, investment accounts, and Dixon Properties, LLC, and Dixon Tree Farms, LLC, and all their assets. Notably, Keith himself represented to the court that he has a net worth of $32 million. Moreover, the trial court considered evidence that Keith had commingled marital and nonmarital assets and had led Holly to believe she was a partner in his companies during the marriage and that he held her out as such. There was evidence that Holly had been involved in the daily operations and

10

management of these companies. Finally, we note that in the divorce decree, the trial court declined to award alimony to Holly in part because of its unequal award of marital and nonmarital property to her. Property division and alimony are complementary devices that the trial court may utilize in combination to make the dissolution of marriage equitable. *Chambers v. Chambers*, 2017 Ark. App. 429, 527 S.W.3d 1. Having considered all the evidence presented and the specific reasons recited by the trial court for dividing the parties' property unequally, we hold that the trial court's division of the property was not clearly erroneous.

Keith's remaining argument is that the trial court erred in giving Holly the benefit of a $199,350.36 reduction of debt against the house, stating that there is no proof in the record to support this reduction of the debt. However, we observe that upon supplementation of the record, there was evidence of such debt reduction in the record, and it was provided to the trial court by Keith himself. Keith also argues under this point that he should have been given credit for the $50,000 he advanced to the builder to build the house, and that any reduction in the debt should not be credited solely against the value of the house in determining the equity because the $546,000 home loan was rolled into a larger loan of $4,485,500 to one of Keith's companies, Dixon Properties, LLC. However, the trial court, in addressing these issues and balancing the equities, found in the divorce decree that

> [b]ecause the $546,000 in financing for the home was commingled with a larger loan intended to also cover purchases related to [Keith's] businesses, and because both marital and nonmarital funds were used throughout the marriage to make purchases for the benefit of the marriage, the Court is taking into account the equitable considerations set forth in Paragraph 3 in giving [Holly] credit for all payments made

11

toward the consolidated loan, rather than a pro rata share. The Court is also excluding from these calculations the $50,000 advance made to the builder.

Paragraph 3, referenced above, is the paragraph in the divorce decree where the trial court stated its reasons and bases for its unequal division of the property, which included the substantial assets Keith will retain after the divorce. Having reviewed the record, we find no clear error in the trial court's distribution of the parties' house or in giving Holly credit for the $199,350.36 reduction of debt on the loan under which the house was financed.

In conclusion, we hold that neither of the points raised by Keith in this appeal has merit. Therefore, we affirm the divorce decree.

Affirmed.

HARRISON, C.J., and GRUBER, J., agree.

*Branscum Law Offices*, by: *Herby Branscum, Jr.*, for appellant.

*LaCarra, Dickson, Hoover & Rogers, PLLC*, by: *Traci LaCerra*, for appellee.