Cite as 2024 Ark. App. 566

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-23-587

| | | |
|---|---|---|
| KEVIN HOWARD | | **Opinion Delivered** November 13, 2024 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRTEENTH DIVISION [NO. 60DR-20-2158] |
| V. | | |
| REGINA HOWARD | | HONORABLE W. MICHAEL REIF, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

### WENDY SCHOLTENS WOOD, Judge

Kevin Howard appeals a divorce decree entered by the Pulaski County Circuit Court on May 11, 2023. He argues that the circuit court erred in its award of rehabilitative alimony, its division of the parties' interest in WTH Development, LLC ("WTH"), and its computation of child support. We affirm.

Regina Howard and Kevin married in 1999 and separated in December 2018. Although they have three children, only one seventeen-year-old boy was a minor when the final decree of divorce was entered. Regina is a computer-science teacher for the Little Rock School District. Kevin is the director of housing for the City of Little Rock. Kevin is also a real-estate developer and partial owner of WTH, and he wholly owns and operates Horizon Realty of Arkansas, LLC ("Horizon").

All three of Kevin's points on appeal concern the circuit court's findings regarding the value of and income earned from WTH and Horizon. At the April 2023 divorce hearing concerning the parties' real-estate businesses, Kevin testified that WTH is a real-estate-development company that owns parcels of land it develops into subdivisions. The parties own 30 percent of WTH. Kevin said that Horizon is a construction and development company that builds homes in these subdivisions.

The only evidence of the value of the owners' equity in WTH was set forth in a summary prepared by WTH's accountant and attached to WTH's 2021 tax return. It provided that the total equity in WTH is $495,228. Regina testified that she obtained this document in discovery from Kevin. Regina admitted on cross-examination that WTH was not making money on the sale of lots but believed they had sold the "main parcel of land where there was income" in October 2022. She also said that she did not know the "balances," "loans," or liabilities of WTH because she had been "kept in the dark" regarding the value of the property and about what had or had not been "paid off."

Kevin prepared and introduced a "demonstrative exhibit" of WTH's assets and liabilities, identifying various tracts of land by parcel numbers and acreage. The exhibit did not assign a value to any of the tracts. The liabilities included special-improvement-district bonds and taxes, but the amount currently owed on either the bonds or the taxes was not provided. Moreover, Kevin's testimony failed to provide an exact amount for the fair market value of the property owned by WTH or WTH's equity in relation to its assets and liabilities. Kevin admitted that the $495,228 amount set forth on WTH's 2021 tax return was the

"equity in the business" based on the initial value of the land, but he said WTH would not be able to pay him 30 percent of that amount if he "walked away" from the business today. He said that WTH no longer owns all the property and that the "monetary value" of WTH is what is in its checking account, less expenses—about $102,000. He failed to explain why the value of WTH did not also include the value of the real estate it owned less any outstanding liabilities.

Regarding Horizon, Regina introduced the records from one of its multiple checking accounts for 2021 and 2022 that Kevin had provided in discovery. She testified that she reviewed the records to determine an approximate dollar amount of the personal spending or benefit that Kevin derived from the business. She testified that she was conservative in her review and did not include expenses for items that might have been "mixed use" or that potentially could have been business expenses, such as charges from Walmart or gas stations. She concluded that Kevin withdrew an average monthly amount of $3,192 for personal expenses from the account. These included airline, Uber, and hotel charges for multiple trips to Las Vegas, Texas, Washington, and Florida; tickets to sporting and other events; charges for Amazon Prime Video, Cold Stone Creamery, nail salons, lingerie, and cigars; charges for dining in local restaurants; a recurring monthly charge of $402; and cash withdrawals. She testified that the trips included his attendance at the NBA summer league in Las Vegas with the father of an NBA player. In addition to hotel and airline charges, these expenses included UNLV merchandise and hookah bar purchases. She also testified that there were several trips to Florida, one of which was potentially his annual golf trip.

Kevin responded by stating that he was not underreporting his income as Regina suggested or "just drawing money out to just pay myself a certain amount of money." Rather, he said that he used the Horizon account for "day-to-day business" expenses. He said that the monthly recurring charge of $402 was used to pay the mortgage on one of the parties' marital properties, which had been vacant for years. He claimed that most of the trips he takes are business trips because he talks about real-estate business "pretty much wherever I go." He explained that the nail-salon expenses were for foot massages and nail trims before he referees games. He said that the cash withdrawals were generally used to pay contractors. Kevin did not introduce any invoices, receipts, or other documentation in support of his testimony.

In the final divorce decree and relevant to this appeal, the circuit court awarded custody to Regina subject to Kevin's "reasonable un-specified visitation." The court ordered Kevin to pay monthly child support of $1,058, which would terminate in May 2024 when the minor child graduated from high school. The court also ordered Kevin to pay spousal support of $1,500 a month for a period of seven years. In calculating child support, the court imputed additional gross monthly income of $2,000 to Kevin from Horizon because he used the account for personal expenses. The court found that Kevin was in arrears under the temporary decree for child and spousal support in the amount of $2,783.[1] Finally, Kevin was awarded ownership of the  30 percent interest in WTH and was ordered to pay Regina half

---

[1]Under the temporary decree, Regina was awarded custody, child support of $908 a month, and spousal support of $2,132 a month.

of the 30 percent interest. The court found that the equity in the company was $495,228, calculated Kevin's 30 percent interest as $148,568.40, and ordered Kevin to pay Regina half that amount: $74,284.20.

For his first point on appeal, Kevin argues that the circuit court erred in granting "rehabilitative alimony" to Regina. Specifically, he contends that Regina could be earning more if she used her skills in "corporate America" rather than in education. He points to her testimony that she earned between $80,000 and $90,000 working for Verizon Wireless until she was laid off in 2015 and her testimony that she did not want to work in the corporate world because it was stressful. He claims that Regina is underemployed and has the ability to achieve the standard of living to which she was accustomed if she chooses. He also argues that the court did not "fully comprehend" the nature of the construction business and the income he derives from it.

A decision regarding alimony is a matter that lies within the circuit court's sound discretion and will not be reversed on appeal absent an abuse of that discretion. *Hiett v. Hiett*, 86 Ark. App. 31, 158 S.W.3d 720 (2004). An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Webb v. Webb*, 2014 Ark. App. 697, at 3, 450 S.W.3d 265, 269. The circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Rawls v. Yarberry*, 2018 Ark. App. 536, at 9, 564 S.W.3d 537, 543.

Arkansas Code Annotated section 9-12-312(a) states that the circuit court may enter an order concerning alimony that is "reasonable from the circumstances of the parties and

the nature of the case." Ark. Code Ann. § 9-12-312(a) (Repl. 2020). The purpose of alimony is to rectify the economic imbalance in earning power and standard of living in light of the particular facts in each case, and the primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Foster v. Foster*, 2016 Ark. 456, at 9, 506 S.W.3d 808, 814–15. The court should also consider the following secondary factors: (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of each of the parties; and (4) the earning ability and capacity of both parties. *Kuchmas v. Kuchmas*, 368 Ark. 43, 45–46, 243 S.W.3d 270, 271–72 (2006).

Section 9-12-312(b) provides that a court may award rehabilitative alimony and may require the recipient to provide a plan of rehabilitation for the court to consider in determining whether or not the plan is feasible and the amount and duration of the award. Our courts have defined rehabilitative alimony as "alimony payable for a short, but specific and terminable period of time, which will cease when the recipient is, in the exercise of reasonable efforts, in a position of self-support." *Foster*, 2016 Ark. 456, at 10, 506 S.W.3d at 815. Our courts have analyzed the concept of rehabilitative alimony using the same factors that apply to permanent alimony. *Carr v. Carr*, 2019 Ark. App. 513, at 10, 588 S.W.3d 821, 827.

Regina is a teacher whose monthly gross income is $5,640.12. She submitted an affidavit of financial means that included expenses of $7,000 before including her significant

credit-card debt. Regina did not request or submit a plan for rehabilitative alimony but asked the court to continue monthly spousal support of $2,132—what had been ordered in the temporary decree—for seven years.

Kevin is the director of housing for the City of Little Rock with a gross monthly income of $10,389.51. He also owns and operates Horizon and, according to the circuit court, uses the Horizon account for personal expenses. The court estimated these expenses at $2,000 a month and imputed this amount to Kevin's income for a monthly gross income of $12,389.51.

The court did not mention in its order that the alimony award was rehabilitative. The court simply awarded Regina alimony of $1,500 a month for seven years. In making this finding, the court specifically recognized the disparity between the parties' incomes, the twenty-three-year duration of their marriage, and Kevin's standard of living during their four-year separation. The court noted that Regina was a teacher with limited potential to earn more income and that Kevin had recently received a significant salary increase and has significant income and potential income through his multiple business ventures.

Kevin is asking this court to reweigh the evidence in a manner that is more favorable to him, which we will not do. It is not this court's duty to substitute its judgment for that of the circuit court. *Baker v. Baker*, 2023 Ark. App. 499, at 4, 678 S.W.3d 608, 613. We leave all credibility determination to the circuit court. *Williams v. Williams*, 2019 Ark. App. 186, at 19, 575 S.W.3d 156, 166. Giving consideration to our standard of review, the discretionary nature of alimony awards, and the evidence before the circuit court, we hold

that it did not abuse its discretion in awarding Regina alimony of $1,500 a month for seven years.

Kevin's second point on appeal is that the circuit court abused its discretion in ordering him to pay Regina $74,284.20 as her one-half of the equity shown on WTH's 2021 tax returns. The court found that the fair market value of WTH was $495,228, calculated the parties' 30 percent share in the company as $148,568.40, awarded Kevin the 30 percent share, and ordered him to pay Regina $74,284.20. Kevin disputes the amount.

The circuit court is given broad powers to distribute both marital and nonmarital property to achieve an equitable division, and the overriding purpose of the property-division statute is to enable the court to make a division that is fair and equitable. *Perser v. Perser*, 2019 Ark. App. 467, at 5, 588 S.W.3d 395, 401. We review division-of-marital-property cases de novo, but we will not reverse the circuit court's findings of fact unless they are clearly erroneous or against the preponderance of the evidence. *Hernandez v. Hernandez*, 371 Ark. 323, 327, 265 S.W.3d 746, 749 (2007). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Kelly v. Kelly*, 2014 Ark. 543, at 5, 453 S.W.3d 655, 660.

Regina asserted that WTH had a fair market value of $495,228 based on a diagnostic summary prepared by WTH's accountant and attached to its most recent tax return that showed the equity in WTH is $495,228. Kevin did not object to admission of this summary into evidence nor did he dispute that he and Regina owned 30 percent of WTH. Instead, he testified that some of the property included in the equity calculation had been sold. But he

provided no documentation regarding what property had been sold, its value, or how this affected either WTH's fair market value or the parties' equity. Kevin simply testified that he would not be able to "walk away" with 30 percent of $495,228 and opined that the "monetary value" of their interest was 30 percent of the funds currently held in WTH's bank account less expenses. His testimony regarding the current financial position of WTH was obscure at best, and significantly, he provided no documentation to support a different valuation for the company. In reviewing the circuit court's findings, this court defers to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony and the evidence. *Jez v. Jez*, 2016 Ark. App. 594, at 2, 509 S.W.3d 1, 3. We hold that the circuit court did not clearly err in ordering Kevin to pay Regina $74,284.20 for her half of the parties' 30 percent interest in WTH.

Kevin next argues that the circuit court erred in its computation of child support because it erroneously imputed $2,000 a month in gross income to him. Our standard of review for an appeal from a child-support order is de novo, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Wright v. Wright*, 2010 Ark. App. 250, at 4, 377 S.W.3d 369, 372. In a child-support determination, the amount of child support lies within the sound discretion of the circuit court. *Parnell v. Ark. Dep't of Fin. & Admin.*, 2022 Ark. 52, at 3, 639 S.W.3d 865, 867. A circuit court abuses its discretion when it exercises its discretion improvidently or thoughtlessly and without due consideration. *Grynwald v. Grynwald*, 2022 Ark. App. 310, at 3, 651 S.W.3d 177, 180.

9

Our supreme court has said that the definition of income included in Administrative Order No. 10 "is intentionally broad and designed to encompass the widest range of sources for the support of minor children." *McWhorter v. McWhorter*, 346 Ark. 475, 481, 58 S.W.3d 840, 844 (2001). Income includes perquisites or goods and services received in-kind and can include meals, housing, personal use of vehicle, and travel. Ark. Sup. Ct. Admin. Order No. 10 (III)(2). "In general, the court should carefully review income and expenses from a parent's self-employment or operation of a business to determine actual levels of gross income available to the parent. The court's duty is to accurately determine a child-support obligation in every case. This amount may differ from the determination of business income for tax purposes." Ark. Sup. Ct. Admin. Order No. 10 (III)(3)(c).

The circuit court made the following findings:

8. **CHILD SUPPORT** – Plaintiffs' income was not disputed at trial. Defendant's income was in dispute at trial. Defendant had not completed an accurate Affidavit of Financial Means prior to trial, but provided one that was prepared during a Court recess. Defendant represented in his Affidavit of Financial Means and testimony that his gross income was $4,500.00 bi-weekly ($117,000.00) per year. He further testified that this income was from his salaried position with the City of Little Rock. Defendant's March 31, 2023, paystub shows that in addition to his salary, Defendant receives $33.24 in "longevity" per pay period, $31.15 "GTL" per pay period, and $500.00 for "car tax" per month.

9. The Court finds the Defendant's gross monthly income from the City of Little Rock is $10,389.51.

10. It was undisputed that the Defendant also owns and operates a business, Horizon Realty of Arkansas, LLC. Defendant claims to have no income from said business. Plaintiff introduced monthly bank statements for the time period of January 2021 through December 2022 for one bank account for Horizon Realty of Arkansas, LLC. Plaintiff asserted the Defendant utilized an average of $3,192.40 per month from that bank account for personal use instead of business use. This spending

did not include all potential personal benefits and only included one of multiple bank accounts of the business. Defendant asserted that all spending from the account was business in nature and that he received no income at all from the business.

11. The spending that Plaintiff asserted was personal included transfers to Defendant's personal account, which Defendant admitted was used to pay a mortgage for real estate in the Parties' personal names. Defendant took numerous trips that included Texas, California, Las Vegas, Hawaii, a family reunion, a trip to the beach, and a golf trip to Florida, among other travels. Those travels included numerous meals, and event tickets. Those travels also included cash withdrawals for which the Defendant did not provide any documentation to support his claim that the cash withdrawals were for business purposes. The Court recognizes that it is undisputed that the Defendant made all of his support payments to Plaintiff via cash deposits. This evidences that at least some of the cash he withdrew from the business account was used for personal matters or that he has an additional source of cash that has not been disclosed. Defendant testified that that at least some of the personal spending was similar to a "bonus" a company provides to a CEO.

12. For child support purposes, income is intentionally broad and designed to encompass the widest range of sources consistent with the State's policy to interpret income broadly for the benefit of the child. *Evans v. Tillery*, 361 Ark. 63 (2005). Income includes perquisites or goods and services received in-kind; including meals, housing, personal use of vehicle, and travel. Revised Administrative Order 10, Section 111(2). Tax deductibility is not always relevant to monies a parent should have available for child support. *Revised Administrative Order 10, Section III(3).*

13. The Court finds that Defendant used the Horizon bank account for personal expenses and imputes an average gross monthly income of $2,000.00 to Defendant from Horizon Realty of Arkansas, LLC.

14. Defendant's Affidavit of Financial Means claims that his health insurance premium is $538.67 per month, with $409.76 of that premium being for the minor child. The Defendant failed to provide any documentation to support that claim. Defendant's March 17, 2023 and March 31, 2023 paystubs do not support his claim on this point as they reflect that Defendant actually pays $505.37 per month in health insurance premiums. There are 4 people covered under this plan, Defendant and his 3 children. Defendant did not offer any evidence to determine what portion, if any, of the premium is attributable only to the minor at issue

here. Without any evidence the Court cannot determine if Defendant pays any additional amount to cover the minor child or pays one amount to cover all three of his children. Since no evidence was introduced regarding the premium the Court declines to deduct any of this amount from Defendant's income.

15. Therefore, the Court finds that Plaintiff has a gross monthly income of $5,640.12 and Defendant has a gross monthly income of $12,389.51 for a total monthly income of $18,029.63 as determined under revised Administrative Order 10 creating a basic level of support for the child of $1,540.00 per month. Plaintiff's income is 31.28% and the Defendant's income is 68.72% of the combined monthly income. It is therefore adjudged that the Defendant shall owe a duty of child support to the Plaintiff in the amount of $1,058. This support obligation shall begin effective May 15, 2023. This obligation shall automatically terminate upon the child's graduation from high school, expected to be in May 2024.

Here, the circuit court heard testimony from both parties concerning the funds Kevin spent out of the Horizon bank account, and it made detailed findings about the expenses. Although Regina testified that Kevin's personal expenses averaged almost $3,200 a month from the account, the court imputed only $2,000 in monthly gross income. We cannot say that the court abused its discretion in its calculation of Kevin's income.

Kevin also contends that the circuit court erred in determining that he was in child-support arrears in the amount of $2,783.[2] At trial, Kevin testified that the house in which Regina lived had roof damage that cost "well over $25,000" to repair. He stated that their insurance company "covered the majority of the total loss," but there was "some part" of the repairs that he paid, too. He said he could not state the exact amount he paid or to whom he had paid it or when, and he did not introduce any receipts or other documentation

---

[2]The court found that Kevin owed $25,714 for child and spousal support under the temporary order and had paid only $22,931.

12

demonstrating that he was entitled to be reimbursed for any such payments. Nevertheless, when Kevin received a $5,771.29 check from the insurance company as a final payment for the claim, he deposited it into the parties' joint account and then withdrew $3,000 to reimburse himself. He claims the remaining $2,771.29 should be credited against his child-support arrearage.

It is undisputed that the insurance proceeds were from a policy of insurance on the family home. The circuit court found that the insurance check was a joint asset, that Kevin took approximately half and left half for Regina, and that Kevin was not entitled to a credit for support payments that he owed Regina using her half of the insurance proceeds.

There is a presumption that all property acquired during a marriage is marital property. *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000). Once one party has shown that property was acquired during the marriage, the burden shifts to the other party to prove by clear and convincing evidence that the property is nonmarital. *Ellis v. Ellis*, 2017 Ark. App. 661, at 5–6, 536 S.W.3d 166, 171. In light of the evidence presented, the court's finding that the property was a joint asset and that Kevin was not entitled to a credit towards his support obligation is not clearly erroneous.

Affirmed.

KLAPPENBACH and THYER, JJ., agree.

*Sheila F. Campbell, P.A.*, by: *Sheila F. Campbell*, for appellant.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Lauren White Hoover*, for appellee.